# WADE v. JUDGE.

1. An affidavit to hold to bail, which affirms that the defendant " has fraudulent-
ly conveyed, or is about fraudulently conveying his estate or effects," is defec-
tive under the act of 1839 " to abolish imprisonment for debt," because it is in
the alternative, instead of alleging one distinct ground.

2. The statutes of 1807, '11, '21, '33 and '39 in respect to insolvent debtors,
are parts of an entire system, and to be considered *in pari materia:* these seve-
ral acts regard the schedule of the debtor rendered after arrest, when accepted
by a court or judicial officer, as a transfer in law of the effects to which it refers,
to the sheriff of the county in which they are found. But if the creditor fail to
obtain judgment, or the debtor is otherwise legally discharged, the legal assign-
ment is avoided and the property re-vests in the debtor.

3. *Quere*—does the acceptance of a schedule operate a transfer of the real and per-
sonal estate of the debtor which may be *extra territorium.*

4. Previous to discharging from imprisonment an insolvent debtor who has render-
ed a schedule of his effects, the court may direct that money, choses in action,
or other property about his person or near at hand, shall be delivered up.

5. In a proceeding by *habeas corpus*, at the suit of one who has been arrested on
civil process, with the view of obtaining his discharge, the State and not the
plaintiff in the action, should be made the adverse party. An order made in such
a proceeding is not a final judgment or sentence, which may be reviewed on
error; but it seems the party aggrieved by it, may obtain justice by a *mandamus*,
or other appropriate writ.

WRIT of Error to the Circuit Court of Lowndes.

The transcript of the record in this case is the proceedings
had upon a writ of *habeas corpus*, sued out at the instance of the
plaintiff in error. It appears that the plaintiff had been arrested
under a writ of *capias ad respondendum*, issued at the suit of the
defendant in error. The objections sought to be here raised are,

1st. To the sufficiency of the affidavit to hold to bail.

2d. The order made upon the schedule rendered by the peti-
tioner in order to his discharge from custody.

The affidavit is not set out in *extenso*, but is thus recited in the
order for bail made by the clerk issuing the writ: " The plaintiff
having made oath that the defendant is indebted to him in the
sum of six hundred and two 81-100 dollars, with interest from the

24th of June, 1841, and that he has fraudulently conveyed, or is about fraudulently conveying his estate or effects."

The schedule of the petitioner described property in his possession and also effects in the State of Mississippi; it was thereupon ordered that he be discharged from custody upon surrendering to the sheriff the evidences of debt, money, and a watch in his possession.

The court made no order as to the notes and effects in Mississippi, and the plaintiff in the action released all claim to the trunk and wearing apparel of the petitioner.

ELMORE, for the plaintiff in error.

T. J. JUDGE, for the defendant.

COLLIER, C. J.—The laws which impose restraint upon personal liberty have never been greatly extended by construction, but it has been considered necessary that whatever they enjoin upon the creditor, in order to warrant the arrest of his debtor, must have been performed, or the latter will be entitled to his discharge. Thus it has been holden that the affidavit must be as positive, as from the nature of the case, it can be, to show the amount and character of the indebtedness. And it has been argued that although the affidavit in the present case may be sufficiently explicit upon that point, yet it is defective in declaring that one of two facts is true, without specifying which.

The second section of the act of 1839, " to abolish imprisonment for debt" after providing that a creditor who wishes to arrest his debtor by legal process, shall make oath of the amount of the indebtedness, requires that he shall state farther, that he " is about to abscond, or such debtor has fraudulently conveyed, or is about fraudulently conveying his estate or effects, or such person has money liable to satisfy his debts, which he fraudulently withholds." By the third section, it is enacted, " that when a plaintiff, or his agent, shall take either of the alternative oaths required in the last section, and the same shall not be controverted by the oath of the debtor, then such debtor may discharge himself from said arrest by rendering a schedule of all the estate, effects, choses in action, and moneys, which he has in possession, or is entitled to, and taking the subjoined oath, &c." The several grounds upon which the arrest of the debtor is authorised by the second section

are to be regarded as distinct from each other, and if the creditor were to state them all in his affidavit, connected as they are, in the act, with the conjunction " or," the affidavit would be defective for uncertainty as to the particular ground embraced, or perhaps for failing to affirm the truth of either. This conclusion is strengthened by the third section, which supposes that the creditor is to swear to the truth of but one of the alternatives. And an affidavit like that recited in the order for bail, which sets out two of the grounds disjunctively, is quite as objectionable as if it contained all.

In respect to the order made upon the schedule rendered, it may be remarked that the act of 1839, does not prescribe the manner in which the debtor's estate shall be disposed of—in fact it is exceedingly defective in its details, considering the important change it proposed in the legislation of the State. For the purpose of ascertaining what the law is upon this point, we must refer to pre-existing statutes. The act of 1807, "concerning executions and for the relief of insolvent debtors" provides that " all the estate which shall be contained in such schedule, and any other estate which may be discovered to belong to the prisoner, or such interest therein as such prisoner hath and may lawfully part withal, shall be vested in the sheriff of the county, wherein such lands, tenements, goods or chattels shall lie, or be found, and such sheriff is hereby authorised, empowered and required, within sixty days after the taking of the said oath, ten days previous notice of the time and place of sale being given, to sell and convey the same to any person or persons whatsoever, for the best price that can be got for the same, and the money arising from such sale shall be by such sheriff or officer paid to the creditor or creditors, at whose suit such prisoner or prisoners, shall be imprisoned." The schedule here referred to, was required to be rendered by one who desired to take the oath of insolvency, upon being taken in execution in a civil case. But the act of 1811, " regulating judicial proceedings in certain cases, and for other purposes" enacts "where any person may be in custody, upon original or mesne process, such person shall be entitled to the benefit of the provisions of the act entitled " an act concerning executions, and for the relief of insolvent debtots" in the same manner as is therein provided for persons charged in execution: *Provided nevertheless*, that no plaintiff in a suit against any person who

Wade v. Judge.

may have availed himself or herself of the provisions of the aforesaid act, and who shall not have obtained final judgment against such defendant taking the benefit of the aforesaid act, shall receive any part of the proceeds of the estate of such prisoner, in the distribution thereof, to the prejudice of any person who may have charged the same prisoner in custody upon execution."

The statute of 1821 is more general in its provisions than either of the preceding enactments, and points out the manner in which a person arrested under mesne or final process may be discharged, or a debtor may relieve himself from liability to arrest.    By this act the debtor is required to " deliver in a schedule of his whole estate and make oath to the effect of that then required by law in relation to insolvent debtors, &c. and the property therein mentioned shall be disposed of in the manner directed by the existing laws, for the benefit of his or her creditors generally."    And the statute of 1807, as modified by an act passed in January, 1833, provides, that after the debtor shall deliver in his schedule and take the oath in verification, and deliver up all evidences of debt in his possession, and orders for such as are not in his possession, he shall then be discharged.    [Aik. Dig. 226,–7–8–9.]

These several enactments form parts of a system and are to be construed *in pari materia.*    As the act of 1839, entitles the party taken in custody to a release therefrom upon exhibiting his schedule properly verified, without giving any directions as to the disposition of the debtors estate, we must refer to the previous statutes for information upon this point.    These laws seem to regard the schedule when accepted by a court or judicial officer, as a transfer in law of the effects of the debtor to which it refers. Whether such would be its operation upon the estate real or personal, which may be *extra territorium,* or who will be regarded the legal assignee where the debtor takes the oath of insolvency without having been previously arrested, we will not determine. But the act of 1807, to which the subsequent statutes refer and thus far adopt, declares that the estate contained in the schedule shall be vested in the sheriff of the county in which it may be found ; and this must be held to be the consequence resulting from the acceptance of a schedule made under the act of 1839. By this construction the statutes effect the purpose proposed by the legislature, the debtor is discharged by divesting himself of his

property, and the creditor obtains the benefit of it through the means of an agent in whom the law has vested it.

If the creditor should fail to obtain a judgment, or the debtor otherwise legally discharge himself from custody, the legal assignment would of course, be avoided, and the property re-vest in the debtor. But so long as the property remains in the sheriff or other officer, neither the debtor or any one else could rightfully interfere with it, and an intermeddling might subject him to a criminal prosecution; the terrors of which would perhaps afford an adequate protection to the rights of the assignee.

In respect to money, choses in action, or other property which may be in the debtors immediate possession, that is to say, about his person or near at hand, it would be competent for the court to direct that they should be delivered up previous to the discharge from imprisonment becoming operative. And as to the other property, we have seen, the debtor, or any one else would retain or use it at their peril.

It is needless to make a more particular application of these principles to the case at bar, as the cause must be repudiated for the reasons which we will now state. *First,* The writ of *habeas corpus* is a means provided by the law, by which one unlawfully held in custody may be released; and if the detention is in virtue of, or under the pretence of civil process, the plaintiff in the action is not a party to the proceeding, but as the petitioner affirms that he is wrongfully deprived of his liberty, the State in legal presumption, is concerned in having justice done. The writ of error is then defective in having made the plaintiff in the action a defendant. *Second,* Even conceding that proper parties have been made, and still the case cannot be entertained. There is no such final judgment as will sustain a writ of error, but it must be regarded as an order made pending the action. If either party is prejudiced by such an order, justice may be obtained by asking this court for a *mandamus*, or other appropriate writ.

Let the writ of error be dismissed.