## MORROW AND NELSON v. WEAVER AND FROW.

1. When a debtor has been arrested, and has given a bond to keep the prison bounds, the creditor is not discharged by his making affidavit that the particular ground upon which he was arrested is untrue. Under the act to abolish imprisonment for debt, he can be discharged by reason of this affidavit only, only when in custody of the arresting officer.

2. The act to abolish imprisonment for debt, is to be construed in connection with the previous legislation on the same subject, and under it, when the prisoner seeks a discharge by a surrender of his property, &c. or by swearing that he has none, the application must be made to a judge, or two justices of the peace, as required by the previous acts: but if the schedule, &c. be contradicted by the creditor, one justice will constitute a court competent for that purpose, under the act of 1839.

3. A plea in avoidance of a bond for the prison bounds, on the ground of a discharge under the statutes relating to the discharge of debtors, is bad if it does not aver that notice was given to the creditor, and which does not show a discharge by a judge, or two justices of the peace, as provided by the act of 1821.

4. If one in the limits under a prison bounds bond voluntarily surrenders himself in the common jail of the county, and to the custody of the sheriff, in discharge of his sureties, it is a discharge of the bond, although done before the expiration of sixty days.

5. But if such surrender is colorable merely, and not intended to be for the purpose of discharging the bond, it does not have that effect. The intention of the going within the jail, and the surrender to the sheriff, is a matter for the determination of the jury.

Writ of Error to the Circuit Court of Dallas.

ACTION of debt, by Morrow and Nelson, against Weaver and Frow, as the sureties of one Parkman, on a prison bounds bond, conditioned that the said Parkman, should continue a true prisoner, in the custody, guard, and safe keeping of the keeper of the prison, or of his steward, bailiff, deputy, or other officer, or of some of them, within the limits of the prison bounds of said prison, as by law established, until he should be thence discharged, by due course of law, without committing any escape in the mean time. Breach assigned, that the said Parkman, on the 25th

May, 1842, did escape, and out of, and beyond the limits of said prison bounds, without having been discharged therefrom by due course of law.

The defendants pleaded as follows, among other pleas, to wit:

That before the supposed breach of the said bond, as alledged in the declaration, the said Parkman was discharged from such arrest and imprisonment, by due course of law, by virtue of his complying with the provisions of the act of the General Assembly, entitled an act to abolish imprisonment for debt, by making oath before W. F. an acting justice of the peace, in and for said county, a person authorized to administer the same, that the particular ground on which he was arrested was untrue, and that he had neither estate, effects, or monies, whereby to satisfy the debt, or liable for the same, and was thereupon released by the arresting officer, to wit: the sheriff of Dallas county. Also, that before the supposed breach of said bond, alledged. that the said Parkman was discharged from such arrest, and imprisonment, by due course of law, by virtue of his complying with the requisitions of the act, &c. entitled an act to abolish imprisonment for debt, by rendering a schedule of all the estate he had in possession, or was entitled to, and taking an oath before W. F. a justice of the peace, &c. that he, the said Parkman, did solemnly swear, that he had not any estate, real or personal, to the amount of twenty dollars, except what was therein rendered, and such goods and chattels, which, by law, were excepted from execution, and that he had not any other estate then conveyed or concealed, or in any way disposed, with a design to secure the same to his use, or to defraud his creditors; and was thereupon immediately released by the arresting officer, to wit: the sheriff of Dallas.

These pleas were demurred to, but the demurrer being overruled, issue was taken on them to the country, as it also was to a plea of performance of the condition of the bond.

On the trial of these issues, it was in evidence before the jury, that Parkman, the debtor, voluntarily placed himself in the custody of the sheriff, while on the prison bounds, and went into close confinement in the county jail; that while in said close confinement, he sent for W. F., a justice of the peace, who went to the jail with the sheriff, when Parkman asked the justice to qualify him to an affidavit, appended to a schedule of his effects, made

37

under, and agreeably to, the act for abolishing imprisonment for debt, which the said justice accordingly did. When Parkman was qualified, the sheriff took possession of the schedule and affidavit, and immediately discharged Parkman, who afterwards left the county, before the expiration of sixty days from the date of the bond sued on; the sheriff retained the affidavit and schedule for some time, and then gave it to the justice, who received and kept it, not as a court, or judicial officer, as he stated, but as a private individual, until a short time before this trial, when it was given to the counsel for the defendants. It was also in evidence that neither Parkman, nor the sheriff, or the justice, or any one for him, or them, had given the plaintiffs any notice of the making of the supposed surrender and affidavit, until after Parkman had been discharged by the sheriff.

On this evidence, the Court charged the jury, the plaintiffs could not recover. Also, that notice was unnecessary to be given to the plaintiffs, by any one, of the making of the surrender, schedule, and affidavit, to entitle Parkman to be discharged under the act.

The overruling the demurrer to the pleas and the charges given to the jury, are now assigned as error.

G. W. GAYLE and R. SAFFOLD, for the plaintiffs in error, made the following points:

1. The first plea to which the demurrer is overruled is bad—1. Because it assumes that Parkman was under *arrest*. One under bond, is not under arrest. [Clay's Dig. 275, § 9.] 2. The discharge in the mode asserted by this plea, could not be had upon the facts set out, for the only discharge by due course of law, when out upon a prison bounds bond is under the general insolvent law. [Clay's Dig. 272, § 2; 5 Ala. Rep. 130.] 3. If the discharge from the bond could be had, under the act of 1839, then it was necessary for the plea to have set out what the plaintiff had sworn, in order that it might be seen in what manner the defendant had sworn that the plaintiffs' cause assigned for suing out the *ca. sa.* was untrue.

2. In addition to the reasons before stated, the other plea is bad, because it omits to state that *notice* was given to the plaintiffs, in order that they might controvert the truth of the schedule, as they are allowed to do by the act of 1839. Notice is not re-

Morrow and Nelson v. Weaver and Frow.

quired in terms by the statute, but its necessity is apparent, to enable the party to do that which the act allows him to do. It is also vicious, in not showing that Parkman delivered up all evidences of debt, or effects, named in the schedule.

3. The facts in evidence do not show a discharge by due course of law, because the surrender was not made to a judicial officer. [5 Ala. Rep. 130.] Nothing surrendered was given up; nor any notice given as it is provided by the statute. [Clay's Dig. 272, § 2.]

4. The principal, by going into jail, did not discharge the bond, nor was he thereby under arrest, or in custody. [1 Paine's C. C. Rep. 368; 19 John. 233; 9 ib. 146.]

5. The act abolishing imprisonment for debt, contemplates the debtor's discharge from the original custody only, when the statutory oath was taken; if this is omitted, and the debtor goes either to prison, or upon the bounds, he cannot afterwards be discharged without notice to the creditor, and then only, upon complying with the requisition of the previous enactments.

EDWARDS, contra, insisted that the questions upon the demurrers were not material, if the evidence showed a discharge of the bond, either by a discharge under the act of 1839, or by the return of the debtor to close confinement. The act of 1839, so far as it provides for a trial before a jury, of the question of fraud, is in violation of the constitution, for no such jurisdiction to punish can be given to a justice of the peace. Hence, if the act contemplates notice to be given, it is only to enable the party to enter upon a trial which would be illegal, and in this view the notice is unnecessary.

The surrendor by the debtor, was an entire discharge of the bond. He is required, at the expiration of sixty days, to return to close custody, and unless he does so, this is a breach of the condition of the bond. [McMichael v. Rapelye, 4 Ala. Rep 383.] The effect of a surrender, whether by the principal or by the sureties, is a discharge of the bond.

GOLDTHWAITE, J.—1. All the questions in this case, involve the construction, more or less, of the act abolishing imprisonment for debt, and cannot well be determined without ascertaining its true meaning and extent.

The first section of this act provides, " that if a plaintiff, or his agent, shall make oath of the amount of the indebtedness of any one to such plaintiff, and that the debtor is about to abscond, or such debtor has fraudulently conveyed, or is about fraudulently to convey, his estate or effects, or such person hath moneys liable to satisfy his debts, which he fraudulently withholds ; then, and in that case, it shall be lawful to arrest the body of such debtor, either by bail process, *capias ad satifaciendum*, or other process to arrest the body, known to the law ; but in case the debtor thus arrested, shall make oath that the particular ground upon which he is arrested, is untrue, and that he hath neither estate, effects or means, whereby to satisfy the same, then he shall be released by the arresting officer, immediately."

So far in the act, no very serious difficulty as to its meaning is supposed to arise. The creditor is only entitled to cause the arrest to be made, by making oath of the amount of his debt, and swearing to one of the four facts named by the act. When the debtor is arrested, he is dealt with in precisely the same manner as he would have been, if this act never had been passed. If it is mesne process, he either procures bail, or is at the risk of the sheriff; if it is final, he either goes into close confinement, or is allowed the benefit of the prison limits, upon giving the statutory bond and security. But in either case, if he chooses to do so, and his conscience will justify that course, he may make oath that the particular ground on which he is arrested, is untrue. When arrested on final process, in addition to the oath, he must also swear, that he has neither estate, effects or monies, whereby to satisfy the debt, or liable for the same. Whether this latter oath is likewise required when the arrest is on mesne process, we need not now inquire. Upon taking this oath, he is to be released immediately.

It results from this brief analysis of this section, that the discharge from the arrest can only take place, by reason of the debtor's denial of the truth of the ground assigned for his arrest, when the party is in actual custody of the officer. But it does not, we think, follow, that he can never be discharged, if he omits to take the oath, until after he is enlarged on bail, or on prison bounds. This will be evident, when we consider, that on mesne process he may at any time, be surrendered by his bail, and that he is then held by the sheriff, under the original authority. Be-

Morrow and Nelson v. Weaver and Frow.

ing thus held, there is the same reason to discharge him, upon his taking the requisite oath, as there would be if the sheriff, during the entire interval between his arrest and the surrender, had continued him in actual custody. The statute does not speak of his being discharged by his bail, or by his securities for the prison bounds, when the oath is taken, but directs that he shall be released by the *arresting officer*, immediately—that is, as soon as the proper affidavit is made—for doubtless the oath must be in writing, and delivered to the arresting officer, as his justification for permitting him to go at large.

Under this section, it is entirely evident, we think, that the intention of the Legislature was, to put oath against oath, without requiring any notice whatever to be given, or interposing any restriction, except upon the conscience of the debtor. This construction of the first section of the act, is sufficient to enable us to determine that the first plea demurred to is bad, as it asserts a discharge by due course of law, in consequence of a denial of the ground upon which the debtor was arrested. The discharge under this oath, as we have shown, can only take place when the debtor is in custody of the arresting officer. It is not necessary therefore, to examine the other supposed defects of this plea.

2. The other plea asserts a similar discharge, as the consequence of rendering in a schedule of his estate, under the second section of the act. So much of that section as it is necessary to construe is in these words : " When a plaintiff, or his agent, shall take either of the alternative oaths required by the last section, and the same shall not be controverted by the oath of the debtor, then such debtor may discharge himself from said arrest, by rendering a schedule of all his estate, effects, choses in action, and moneys, which he has in his possession, or is entitled to, and taking" a particular oath, which it is not necessary to repeat here. " And if the plaintiff shall desire to controvert the truth of such oath, or schedule, then, on making oath that he believes the same to be untrue, any justice of the peace shall be legally authorized to summon a jury of twelve men, *instanter*, to try the question, whether such oath or schedule is untrue, and fraudulent, or not ; and said jurors shall be liable to the challenge of either party, as in civil cases." The remaining section directs what shall be the consequences of a verdict against the debtor ; one of which is imprisonment, not exceeding one year ; and another is, that he

shall forever be debarred from the beneficial provisions of the act.

It is this portion of the statute, of which it is difficult to ascertain what the intention of the Legislature was; but if it stood alone, and unaided by other enactments in relation to the same subject matter, it cannot, we think, be questioned, that a proper construction would require the creditor, or his agent, to be *notified*, that the debtor intended to discharge himself, by rendering in the schedule, and taking the oath prescribed by the statute; for otherwise, it would be impossible to give effect to that part which provides, that in case of a verdict against him, the debtor shall be debarred from the beneficial provisions of the act. This part of the enactment, therefore, seems to indicate the intention, that the debtor should not be discharged until after the controversy between himself and the creditor. The difficulty of construction however, is lessened, when the other statutes in relation to the same subject matter are examined. We have heretofore held, in the case of Wade v. Judge, 5 Ala. Rep. 130, that the act of 1839 was to be construed in connection with the other legislation upon the same subject matter, to ascertain how, and in what manner, the property surrendered should be disposed of; and in whom the title became invested by the surrender. The same rule of construction will refer the matter of notice, left doubtful by the act of 1839, to that of 1821, which provides, very fully, how it shall be given, and when. By that act it is made the duty of the judge, or two justices of the peace, to whom the application is made for the discharge, to appoint a time and place, and to cause at least ten days notice to be given to the creditors, their agents. &c., if within the State, and twenty days notice, by advertisement, if without the State; it also provides what the notice when served on the creditor, shall advise him of. [Clay's Dig. 275, § 9.] This act also provides the mode and manner in which the hearing shall be had, and the discharge made.

The only difficulty there is, of engrafting the second section of the act of 1839 upon that of 1821, is, that the former permits the oath of the debtor, and his schedule, to be controverted before *one* justice of the peace, while the former act requires the action of *two* to receive the schedule and grant the discharge. This difficulty is nothing more, however, than an incongruity, which is sometimes found to exist in other cases, when several statutes to-

Morrow and Nelson v. Weaver and Frow.

gether make one general system; but it offers no serious impediment to the operation of the law. The application for a discharge must be made to a judge, or to two justices of the peace, and they proceed to hear and determine the application for a discharge, and make the requisite orders respecting the property, &c. surrendered. If the creditor, beyond this, wishes to controvert either the oath or the schedule, any one of the justices would form a court, competent for that purpose, and we cannot doubt, that the verdict of a jury, under the act of 1839, would have the effect, as it is declared it shall, to debar the debtor from the beneficial provisions of the act.

3. We need not perhaps have said so much, if our only object was to show the badness of the other plea demurred to, for that is evidently vicious, under the conclusions to which we have come, in not averring notice to the creditor, and also, because, if that was given, there has been no discharge by a judge, or two justices, as prescribed by the act of 1821.

4. It only remains to consider the charge upon the evidence, which is, that under the proof before the jury, the plaintiffs could not recover. The proof showed, that the defendant voluntarily went within the common jail, and placed himself in the custody of the sheriff, while in the prison bounds. If this was done with the intention of surrendering himself as a prisoner, and in discharge of his sureties, we cannot doubt that it was a discharge of the bond for the prison bounds. Whatever may be the local law of New York, with respect to the inability of a prisoner, or his sureties, to avoid such a bond there, by his surrender, it is certain that it may be done under our laws. Indeed, if the prisoner omits, at the expiration of sixty days, to surrender himself, within the prison walls, that is a breach of the condition of the prison bounds bond, as, after that time, the limits allowed by law are the walls of the jail. McMichael, et al. v. Rappelye, et al. 4 Ala. Rep, 353.] To require a debtor to surrender himself at an exact day, and not allow him to do it in advance of that day, is a matter which, we think, is not a fair construction of the statute.

5. But the intention with which the surrender was made by the debtor, was a main subject of inquiry before the jury; if made with the intention to discharge his sureties, and to impose on the sheriff, the duty of holding him by virtue of the *ca. sa.* it was a discharge of the bond; but if the surrender was colorable merely,

and not intended for this purpose⁵ it cannot have that effect. This is a matter which should have been left to the jury, and having been withdrawn from their consideration, by the generality of the charge, the judgment must be reversed and remanded.