## TAIT, use, &c. v. PARKMAN AND WEAVER.

1. When a breach of the condition of a bond is specially assigned, a general plea of conditions performed, is bad—the plea should set out the mode, and manner of the performance. So to such an assignment, a general plea of discharge is bad—every fact showing the legality of the discharge, should be averred.

2. An actual surrender in discharge of the condition of a prison bounds bond, cannot be vitiated, by the motive, or intention, which influenced the surrender into custody.

3. T obtained a judgment for the use of M, against P, and sued out a *ca. sa.*, and died, after which, P executed a prison bounds bond, which was made payable to T, for the use of M. Held, that the executors of T, could not maintain a suit on this bond, against P, for a breach of the condition.

Error to the Circuit Court of Dallas.   Before the Hon. N. Cook.

THE plaintiff brought debt, against the defendants, on a prison bounds bond, executed by Parkman as principal, and Weaver as security, and assigned as a breach, that Parkman escaped from the limits as established by law. The defendants filed a number of pleas to the second, third, fourth, seventh, eighth, ninth and fourteenth pleas, the plaintiff demurred, and the demurrer was overruled.

The second plea states, that said Parkman did continue a

prisoner, in the custody, guard, and safe keeping of the keeper of said prison, within the limits of the prison bounds of said prison, as by law established, until he was discharged by due course of law, without committing any escape in the mean time.

Third plea states, that said Parkman did do, and perform, as in and by said writing obligatory, he covenanted to do.

Fourth plea, that said Parkman did surrender himself in discharge of the bond, before the expiration of sixty days, and before any breach of the condition of said bond, to the sheriff, to be kept in close prison, until discharged by due course of law.

Seventh plea, that Parkman surrendered himself to the sheriff, before any breach of the condition of said bond, at the jail of said county to be continued, and kept a close prisoner therein, until discharged by due course of law.

The eighth plea, that the writing obligatory, described in the declaration, was executed on the 29th day of March, 1842, and that on that day, being the day on which the bond was executed, there was no such person in existence as Caleb Tate, the plaintiff's intestate, nor has there since that time, been any such person as Caleb Tate in existence.

The ninth plea, the same in substance as the eighth, with the additional allegation, that Caleb Tate, was the plaintiff in the judgment at law, on which the process issued, by virtue of which Parkman was arrested.

The fourteenth plea, that the said writing obligatory is not their deed; that is to say, they did not execute any such writing obligatory, to the said Caleb Tate, in his life time, and of this they put themselves upon the country.

The plaintiff not pleading over, judgment final on the demurrer was rendered for the defendants. The overruling of the demurrer is here assigned as error.

G. W. GAYLE, for plaintiff in error.

1. The second plea is bad, because it avers that defendant Parkman was "discharged by due course of law," without stating how, or in what way he was discharged. The particulars of the discharge must be set forth, so that plaintiffs can show that the discharge was not by due course of law—

not *bona fide,* but colorable. See Monroe and Nelson v. Weaver and Frow, 8 Ala. 288.

2. The third plea is bad, because the manner of the performance is not shown, and because the plea is not in answer to the breach. 3 Ch. Pl. t. p., 985, Plea, and notes K. and M.

3. The fourth plea is bad, because it don't state that the surrender was *bona fide.* Under this plea, if the surrender was colorable, and proof showed a surrender colorable, plaintiff could not recover, because the issue would be the fact of surrender—when if colorable, plaintiff is entitled to a verdict. 8 Ala. 288.

4. The seventh plea is bad, for the same reason. Ib. 288.

5. The eighth plea is demurrable, because—1. The defendant Weaver is estopped from saying there was no such person as Tait, the obligee, when the bond was given. (Tait, use, &c. v. Frow, 8 Ala. 543, is evidently upon the idea that Parkman was a prisoner, and bound to give a bond, or go to jail. Weaver was not bound to go upon the bond, and the reasoning can't apply to him.) 2. But is not the decision in Tait v. Frow, as to estoppel, wrong, and are not the principal and sureties estopped from denying that the obligee was dead when they gave the bond? McWhorter v. McGee, 1 Stew. 548; Crump v. Bennet, 2 Littell, 209. 3. The statute requires the bond to be made payable to the plaintiff in the judgment and execution, and that cannot be a nullity which is executed according to its provisions. Clay's Dig. 499, § 2. 4. The plea don't reach back to the judgment or *ca. sa.,* and therefore admits that the plaintiff was alive when the judgment was rendered, and when the *ca. sa.* issued. If he died between the issuance of the *ca. sa.* and the arrest of Parkman, the bond was properly taken. An *alias fi. fa.,* issuing after the death of a plaintiff, when one has issued in his life time, is regular; and a delivery bond can legally be made to a deceased plaintiff, could the obligor of a delivery bond avoid it because the plaintiff was dead when the *alias* issued. Boyd v. Dennis, 6 Ala. 55.

W. Hunter, contra.

1. The declaration is bad; and if the pleas were defective, the defect should be visited upon the declaration. The de-

claration is bad, because it does not aver the bond was made in the life time of Tait, and also because the breach is defective in not negativing payment to Tait, the intestate. Ch. Pl. 328; 6 Ala. 509; Saund. on Pl. and Ev. 134.

2. As to the pleas of performance, surrender, &c., they are taken in short, and there can be no pretence of any substantial defect.

3. The other pleas to which demurrers were overruled, are those setting up as a defence the fact that Tait was dead when the bond was given. It is maintained that, on no conceivable ground, can these plaintiffs be entitled to recover on this declaration, if these pleas be true. These positions are assumed as the grounds of this conclusion: 1. The question raised is not, was the bond void, but were these plaintiffs entitled to sue and declare as they have done, if the facts stated in the pleas are true. 2. That administrators can only maintain suit on some legal right which arose in the life time of their intestate, or on some contract made with them as administrators after his death, and which contract, or the debt it evidences, forms assets of the estate. 3. That this bond, executed after the intestate's death, created no legal right of action in the obligee. At common law, it is too obvious for argument. Smith's Merc. Law, 134; Chitty on Con. 3; 2 Comyn's Dig. 52; Story on Con. 52; Story on Agency, 507; 1 Johns. 114; 8 Johns. R. 301; 9 Ib. 72; 11 Ala. 340.

DARGAN, J.—We must consider the second and third pleas as averring nothing more than a general performance of the condition of the bond, and the question is therefore presented, whether a defendant can plead *generally, conditions or covenants performed*, to a declaration that sets out a specific breach. In the case of the Commonwealth, use of Carswell, v. Gower, 4 Littell, 279, the plaintiff declared on a bond executed by Gower, conditioned faithfully to perform the duties of jailer. The declaration set out a specific breach of the condition, and the defendant pleaded condition performed generally, without setting out the mode or the manner of the performance. To this plea there was a demurrer. The supreme court of Kentucky held the plea to be insufficient; and in the opinion delivered, said, " that an actioe on a deed

containing general affirmative covenants, the defendant may plead performance generally, but if there is a specific breach alledged, the defendant must respond specially to it, and cannot plead performance generally, and thereby throw on the plaintiff the burthen of repeating the same facts in his replication, stated in the particular breach assigned in the declaration.

This we hold to be the correct mode of pleading, and although a defendant may plead performance generally, when no breach is assigned, and thereby compel the plaintiff in his replication to set out the breach on which he relies, yet when the plaintiff assigns specially, the breach of the condition in his declaration, the defendant should plead specially to it, and set out the mode and manner of the performance. The propriety of this mode of pleading will be more apparent, if we reflect, that a condition in a deed may be performed by doing one *of two or three distinct things;* and if the plea of performance is good, to a declaration setting *out a particular breach*, the court could not, by examining the record, ascertain the distinct facts put in issue ; nor would the plaintiff be informed of the facts, that the defendant relied on as a defence. For instance, the condition of the bond declared on, might be saved by payment of the debt, or the defendant might have made a surrender of his effects, and taken the benefit of the insolvent laws ; or might, at the expiration of sixty days, have surrendered himself to close confinement; either of those acts would have saved the condition of the bond ; but which he intended to rely on by the plea of general performance, could not appear ; and to hold that the plaintiff should repeat in a replication, the assignment averred in the declaration, to which the defendant should rejoin specially, and in his rejoinder state how the condition was performed, would be to lengthen out the pleadings, and swell the record for no practical purpose whatever.

But it may be said, as the second plea avers, that the defendant, Parkman, did not remain a prisoner, &c. until discharged by due course of law, that the manner of the performance is sufficiently stated. But if we were to consider this in any other light than the plea of performance generally, we would have to intend, that the defendant averred, that

he was discharged by due course of law from the arrest, and did not commit any escape in the mean time. If we were to consider it *a plea of discharge*, it is evidently defective, because such a plea must aver every fact that will show the legality of the discharge. See 8 Ala. Rep. 288. Whether then we regard this plea as a plea of performance generally, or as a plea of discharge by due course of law, it is defective, and the court erred in overruling the demurrer to it. But the fourth plea is clearly good. A principal may surrender himself, in discharge of his bail, and if the surrender is in fact made, and the prisoner in actual custody, the intent, or the *quo animo*, with which the act was done, cannot alter its legal effect. The language of the court, in the case of Morrow & Nelson v. Weaver et al. 8 Ala. Rep. 288, " that if the surrender was colorable merely, it could not discharge the sureties to the bond, *must be understood to mean, if the surrender was pretended merely, but not in truth made*, the sureties would not be discharged. But if it was intended, by that decision, to hold, that notwithstanding the surrender was complete, and the principal in actual custody, yet the intent, or motive that induced the plaintiff to surrender himself to close custody, could influence the legal effect of the act, we should be compelled to this extent to overrule that decision; for we could not inquire what motive or intention influenced the act; nor could the effect of the surrender be influenced by the intent that induced it. The seventh plea being in substance the same as the fourth, the court properly overruled the demurrer to it.

The eighth and ninth pleas show, that Tate, for the use of Edwards, instituted a suit against Parkman, in which judgment was rendered, and a *ca. sa.* issued, but before the bond was executed, Tate died, and the question is, can the plaintiffs, as his executors, maintain a suit on it? It is evident that Tate, the testator, could take no legal right in the bond. There was no such person in *esse* and no legal rights can vest in the dead. Death strips us of all our legal rights, and casts them upon others. If, however, a right is vested in one, whilst in life, his executor may assert it, if it be a chattel interest, after his death, although no cause of action accrued whilst the testator lived.

But to enable an executor to sue, who represents, and in in law is possessed of the rights of the testator, he must show a title in his testator, at the time of his death, and his letters testamentary will then show, that this title vested in him, and relates back to the moment that the testator died.   If he fails to show that his testator had any title to the chattel, in reference to which suit is brought, he must fail in the suit. If this view be correct, it is evident that the plaintiffs cannot maintain the action, for although the legal title to the judgment, out of which the bond grew was vested in the testator, yet the bond (if not a nullity) gives a new right entirely distinct from the judgment, although the judgment was the source from which it sprung.   It is however suggested, that although no legal title to the bond ever vested in Tate, because he was dead at the time it was executed, yet it must be considered as a contract entered into with the plaintiffs, in their character as executors, and therefore they may sue for a breach of it.   To this it may be answered, that they have not so declared; but even if they had, they are not the obligees of the bond.   No covenant is entered into with them —neither in their own right, nor in their character as executors; they therefore can take no interest in, or title to it, and cannot maintain a suit upon it.

The fourth plea, we consider as nothing more than the plea of *non est factum*, which being verified, was a sufficient bar.   As the court erred in overruling the demurrer to the second and third pleas, the judgment must be reversed, and the cause remanded, if the plaintiff in error desires it.