# THE PEOPLE OF THE STATE OF ILLINOIS

### v.

# TIMOTHY BRADLEY.

1. HABEAS CORPUS—*service of the writ.* Where a writ of *habeas corpus* is applied for and issued in open court, in the presence of the person to whom it is directed, having custody of the prisoner, and the fact was known to him, and the writ could have been handed to him had he desired it, that he might make his return: *Held,* this amounted to an acceptance of the service, and a waiver of a delivery of the writ to him.

2. SAME—*void writ.* It may be conceded that, if a court has no juris-diction to issue a writ of *habeas corpus ad subjiciendum* in any case, the writ would be void, and the person to whom it is directed would not be bound to obey it, and would not be in contempt by refusing so to do.

3. JURISDICTION. The criminal court of Cook county is but the con-tinuation of the recorder's court of the city of Chicago, with extended ter-ritorial jurisdiction and enlarged criminal jurisdiction, but with its civil jurisdiction between citizen and citizen taken away.

4. SAME—*constitutional jurisdiction.* The 26 sec. Art. VI of the consti-tution of 1870 provides that, the recorder's court of the city of Chicago shall be continued and called the "Criminal Court of Cook county," and shall have jurisdiction in all cases of criminal and *quasi* criminal matters arising in the county of Cook, or which may be brought before it pursu-ant to law; but it shall have no jurisdiction in civil cases, except those on behalf of the people: *Held,* that this provision of the constitution is self-executing, and operated on the court as soon as adopted.

5. When the constitution declared that the recorder's court shall be con-tinued, it was intended that it should be with all of its powers, authority and jurisdiction, except in purely civil cases between citizen and citizen, which was thereby taken away; and the statute fixing its terms, providing for selecting jurors, etc., still remained in force.

6. SAME—*habeas corpus.* The recorder's court had jurisdiction of the writ of *habeas corpus ad subjiciendum,* being a prerogative writ, and essential to the liberty of the citizen, and secured by constitutional and legislative enactment, and as where a prerogative writ is given by the common law to the courts, amendments of the constitution continuing such courts will not be deemed to take away such writs, unless the intention to do so at least fairly appears.

7. It has been held in English courts, that the prerogative writ of *cer-tiorari* will not be deemed taken from the court unless expressly men-tioned; and the same rule has been applied to the writ of *habeas corpus.*

8. SAME—*constitution.* There is nothing in that section of the constitution which amounts to a limitation of the general power of the court to issue the writ.

9. HABEAS CORPUS—*its nature.* The writ of *habeas corpus ad subjiciendum* is that which issues in criminal cases, and is deemed a prerogative writ, and as to the subject, it is deemed a writ of right, that is, such an one as he is entitled to *ex debito justitiæ,* and is in the nature of a writ of error to examine the legality of the commitment. The prerogatives of the crown of England are here vested in the people, and they have, as he has, the right to know through it why the liberty of any citizen is restrained, and for what he is confined. For this reason it is sued out in the name of the State or the people. In legal contemplation, the people, in all cases of wrongful detention, are concerned in having justice done. It is an inquisition by the government at the suggestion and instance of an individual, but still it is done in the name and capacity of the sovereign. It follows that such a case is within the very exception, limiting the jurisdiction of the criminal court in civil cases.

10. The writ is of undoubted common law origin, and the King's Bench having general, civil and criminal jurisdiction, had jurisdiction of the writ in all cases, but other courts having only civil jurisdiction until the adoption of the act of 16 Car. II, were supposed to have but a partial jurisdiction of it, as in the case of an officer or suitor, etc., in that court, but if he were committed in a criminal matter, these courts could only have remanded him or taken bail for his appearance in the court of King's Bench.

11. CIRCUIT COURTS—*jurisdiction.* The circuit courts of this State possess an original common law jurisdiction in criminal cases answering to that of the King's Bench, and they would have had jurisdiction of the writ had our *habeas corpus* act never been passed, and all of that jurisdiction is expressly conferred, by the constitution of 1870, upon the criminal court of Cook county; and the person whom relator held in confinement was under a criminal charge, and the court had jurisdiction to issue the writ, as he was charged with an offense bailable under our statute; nor does it make any difference that the crime was charged to have been committed in another State, as the cause was brought before the criminal court within the language of the constitution.

12. PROCESS—*service.* The statute provides that any process which may be issued by the clerks of the circuit courts of the State, or any judge thereof, in pursuance of law, shall be executed by the officers or persons to whom directed; and the circuit courts shall have power to punish all contempts offered to them when sitting as such, and for disobeying any of its process, rules or orders issued or made conformably to law, and there is undoubted common law authority to punish as a contempt for disobedience of the writ of *habeas corpus.*

13. COURT—*jurisdiction.* The court having jurisdiction of both the *habeas corpus* and the attachment, and having heard evidence as to the service of the writ of *habeas corpus* and disobedience of its command, the determination of the criminal court on these matters is conclusive. The evidence heard below can not be properly brought before this court in such a case. In its absence it will be presumed that it showed a service of the writ, and such a wilful disregard or evasion of the writ as amounted to a contempt of court.

This was an application to this court in term time for a writ of *habeas corpus,* by the relator, M. C. Hickey, in the name of the people, to be discharged from imprisonment. It appears that a warrant was issued by a justice of the peace of Cook county, for the arrest of one Eli Brown, on a charge of having committed burglary in the State of Indiana. The proceeding was under our extradition statute.

Brown was arrested by relator, and whilst in his custody, Brown, on the 15th day of August, 1871, applied to the criminal court of Cook county for, and obtained, a writ of *habeas corpus,* which was served by delivering him a copy of the same. Hickey, on the 17th of the same month, produced Brown in court as commanded by the writ, and the proceeding was dismissed. Brown at once applied for a new writ, which was ordered to issue by the court, which was done, and Hickey was ordered by the court to remain with the prisoner until a new writ could be issued. He did not leave until the writ was issued and read to him by counsel for Brown; the court thereupon adjourned until half past two o'clock in the afternoon of that day, and upon the court coming in, Hickey did not at that time produce the body of Brown when the court met, but filed exceptions to the writ, which were overruled by the court. Relator states, in his petition, that about fifteen minutes after the court met, Brown was arrested by one Lanigan, under a warrant issued by a United States commissioner. He also alleges that the arrest by Lanigan was not by his connivance, privity or procurement.

On being required to make return to the writ of *habeas corpus,* Hickey protested that he had not been served with the

writ, but returned that Brown had been forcibly taken from his custody by Lanigan under a writ issued by the commissioner.

The court thereupon entered an order against Hickey to show cause why he should not be punished for a contempt of court in failing to obey the writ of *habeas corpus.* He appeared and entered a motion to set aside and quash the order, but the motion was overruled. He then filed a return and affidavits in answer of the rule, but the return was not received by the court as a discharge of the rule, but, after hearing the evidence, ordered an attachment to issue against Hickey. The writ was issued, directed to the sheriff of Cook county, who arrested him, and this petition was filed to procure this writ to release him from custody.

The case was heard by the court on the foregoing facts, which appear from the petition, return and exhibits filed therewith.

Mr. EMERY A. STORRS, for the relator.

Mr. JOHN LYLE KING, for the respondent.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This is a proceeding upon *habeas corpus* issued out of this court upon the application of Michael C. Hickey, alleging that he was unlawfully imprisoned by the sheriff of Cook county. The sheriff has returned, as the cause of the caption and detention of the relator, an attachment issued by the criminal court of Cook county against him for a contempt in failing to produce the body of Eli Brown upon a writ of *habeas corpus.*

The illegality of relator's imprisonment is based upon two grounds: 1st. That the criminal court had no jurisdiction to issue the writ of *habeas corpus;* that it was wholly void, and

therefore he could not be in contempt for not obeying it. 2d. That the writ was not delivered to him, so that there was no such service as bound him to obey it.

We think the circumstances preclude him from objecting to the service. The writ was applied for and issued in open court, while he was present with the prisoner, and then read to relator. The court then took a recess, and was to convene in the afternoon for the purpose of proceeding with the case. All this he well knew, and if he had asked for the writ, to make his return, it is to be presumed that it would have been given to him. But failing to do so, when he was fully cognizant of all the proceedings, will be deemed, under the circumstances disclosed by his petition and the exhibits, an acceptance of service and a waiver of the act of delivering the writ to him.

It may be conceded that, if the court had no jurisdiction to issue the writ of *habeas corpus ad subjiciendum* in any case, the writ in question was simply void, and the person to whom it was directed could not be chargeable with contempt in refusing to obey it. The question of jurisdiction is, therefore, the only one we are called upon to decide in this case.

The criminal court of Cook county is but the continuation of the recorder's court of the city of Chicago, with its territorial jurisdiction extended from the boundaries of the city of Chicago to those of the county of Cook, its criminal jurisdiction enlarged to the inclusion of treason and murder, but its purely civil jurisdiction in all cases between citizen and citizen is taken away.

The first section of the act creating the recorder's court (Scates' Stat. 661) declared that there should be established in the city of Chicago an inferior court of civil and criminal jurisdiction, which should be a court of record, by the name of the Recorder's Court of the city of Chicago, and should have concurrent jurisdiction within said city with the circuit court in all criminal cases, except treason and murder, and of civil cases where the amount in controversy should not exceed

$100. "Said court and the judge and clerk thereof shall respectively have the like power, authority and jurisdiction, and perform the like duties as the circuit court and the judge and clerk thereof, in relation to all matters, suits, prosecutions and proceedings within the city of Chicago, so far as the same are not otherwise limited by this act." The section then proceeds to provide for the election of the judge and clerk, and prescribe their term of office.

The third section declared that the court should have a seal to be provided by the city of Chicago; that it should be held in such place as should be provided by said city.

The ninth section prescribes the qualification of jurors, and the manner of their selection. The tenth section for changes of venue, and the twelfth section for the regular terms of the court.

By a subsequent act (Scates' Stat. 671) it was declared that the inferior courts, which were then or might thereafter be established in the cities in this State, should have concurrent jurisdiction with the circuit courts in all civil and criminal cases, except in cases of murder and treason, any law then in force to the contrary notwithstanding; and that the rules of practice in such inferior courts should conform as near as might be to the rules of practice in the circuit court of the county in which the particular inferior court might be established.

These were some of the statutory provisions relating to the recorder's court at the time of the adoption of the constitution of 1870.

The 26th section of Article VI of that instrument is as follows: "The recorder's court of the city of Chicago shall be continued, and shall be called the 'Criminal Court of Cook county.' It shall have the jurisdiction of a circuit court in all cases of criminal and *quasi* criminal nature arising in the county of Cook, or that may be brought before said court pursuant to law; and all recognizances and appeals taken in said county in criminal and *quasi* criminal cases shall be returnable and taken to said court. It shall have no jurisdiction in civil

cases, except in those on behalf of the people, and incident to such criminal or *quasi* criminal matters, and to dispose of unfinished business. The terms of said criminal court of Cook county shall be held by one or more of the judges of the circuit or superior court of Cook county, as nearly as may be in alternation, as may be determined by said judges, or provided by law. Said judges shall be *ex officio* judges of said court."

This provision, as clearly appears from the context, was intended to be self-executing, and operated upon the court in question immediately upon the constitution being adopted.

The declaration that the recorder's court shall be continued, is to be read in connection with the other parts of the section. When so read, the meaning is apparent. It is continued with all its powers, authority and jurisdiction, except its jurisdiction in purely civil cases between citizen and citizen is taken away. The provisions of the statute fixing its terms, providing for the selection of juries, the attendance of State's attorney and sheriff, and their duties in relation thereto, are still in force. In short, all the machinery through which the functions of the criminal court are exercised, is afforded by the statute creating the recorder's court, or else such functions must be considered as dormant, until the means for their exercise shall be provided by legislation.

That the recorder's court had jurisdiction of the writ of *habeas corpus ad subjiciendum*, there can be no doubt. It is a prerogative writ, great and efficacious in the protection of the citizen in one of the most essential of all his personal rights—his right to liberty. When independence was achieved, all of the prerogatives of the crown of England devolved upon the people of the States, and are usually, though not always, exercised through statutory and constitutional enactments, and where jurisdiction over any of the writs recognized as prerogative has been given by the common law, or conferred by statute, upon any of the courts of the State, amendments of the constitution continuing such courts will not be deemed to take

away the writs, unless the intention so to do at least fairly appears.

It has been repeatedly held, in England, that the prerogative writ of *certiorari* will not be deemed taken from the crown unless expressly mentioned. *Rex* v. *Davis,* 5 Term R. 626; *Rex* v. *Tindal,* 15 East, 339 n. Nor is the rule limited to cases where the crown has an actual interest, but extends to all prosecutions in the name of the king. *Rex* v. *Boultbee,* 6 N. & M. 26, 4 A. & E. 498, 1 H. & W. 713. This rule is one of the many of that great system, the common law, affording the strongest guarantees of the rights of liberty, and from which system we have borrowed much, and to which have really added but little, by means of either bills of rights, or the development of new principles, except in respect to the abolition of imprisonment for debt.

In Crowley's case, 2 Swanston R. 71, Lord ELDON applied the same rule to the writ of *habeas corpus* in the following forcible language: "It is then contended," he says, "that the statute, 31 Car. 2, contains an implied negative of the general power of the court of chancery to issue the writ because it expressly confers that power in particular cases. Be it so; but if the power existed before that statute, a power vesting a very high prerogative in the king, I say that it could not be taken away in any case, by inference, from an enactment which enforced it in some cases. I go farther: if the prerogative of the king can not be affected by general words in a statute, will a British court of justice permit it to be said that a statute designed to enforce, in particular instances, the prerogative in favor of the liberty of the subject, shall deprive the subject of that liberty, in any case?"

But there is nothing in the limitation of the section of the constitution which amounts to a negative of the general power of the recorder's court to issue the writ. "It (the criminal court) shall have no jurisdiction in civil cases, except in those on behalf of the people, and incident to such criminal or *quasi* criminal matters."

Blackstone, in speaking of the writ of *habeas corpus ad subjiciendum*, says: " This is a high prerogative writ, and therefore, by the common law, issuing out of the court of king's bench, not only in term time, but also during the vacation, by a *fiat* from the chief justice, or any other of the judges, and running into all parts of the king's dominions, for the king is at all times entitled to have an account why the liberty of any of his subjects is restrained, wherever that restraint may be inflicted." 2 Bl. Com. 131.

"The *habeas corpus ad subjiciendum* is that which issues *in criminal cases*, and is deemed a prerogative writ which the king may issue to any place, as he, has a right to be informed of the state and condition of the prisoner, and for what reasons he is confined.    It is also, in regard to the subject, deemed a writ of right, that is, such an one as he is entitled to *ex debito justitiæ*, and is in the nature of a writ of error to examine the legality of the commitment, and therefore commands the day, the caption and cause of detention to be returned." 4 Bac. Abr. 564.

" The *habeas corpus ad subjiciendum* (so termed from the language of the writ, to undergo and receive all such things as the court shall consider of the party in that behalf,) issues *in criminal cases*, and is deemed a prerogative writ which the king may send to any place, he having a right to be informed of the state and condition of every prisoner, and for what reason he is confined.    It is also, in regard to the subject, deemed his writ of right, to which he is entitled *ex debito justitiæ*, and is in the nature of a writ of error to examine the legality of the commitment, and therefore commands the day, the caption and the cause of detention to be returned." 1 Chit. Crim. Law, 120; 2 Tomlin's Law Dict. 63-64.

The prerogatives of the crown of England being here invested in the people, they, in the place of the crown, are entitled to have an account why the liberty of any citizen is restrained, or, in other words, to be informed of the state and condition of the prisoner, and for what reason he is confined.

Upon this ground the writ always runs in the name of the State or the people. The State, in all cases of wrongful detention, is, in legal presumption, concerned in having justice done, and therefore must be a party to the proceeding to remove it. *Wade* v. *Judge*, 5 Ala. 130.

The proceeding in *habeas corpus*, says Mr. Justice Betts, " is an inquisition by the government at the suggestion and instance of an individual, but still in the name and capacity of the sovereign." *Barry* v. *Mercein*, 5 How. 108.

Such being the right of the sovereign, in England, of the people of the States here, and the nature of the writ, it is a case which falls within the very exception contained in the clause limiting the jurisdiction of the criminal court in civil cases. It is substantially a case on behalf of the people, and incident to criminal or *quasi* criminal matters.

The writ is unquestionably of common law origin. 2 Inst. 55, 4 Inst. 290, 2 Hale P. C. 144, 2 Vent. 22; and in Crowley's case, 2 Swanst. *supra*, its origin and the jurisdiction of the high courts of England were discussed by a great and accomplished judge. From that case, and the authorities cited, it appears that the courts of Westminster Hall had a full or partial jurisdiction over the writ, according to the nature of their respective jurisdictions, as respects civil and criminal cases. Hence, the King's Bench, being a court of the highest original jurisdiction in civil and criminal cases, had full and undisputed cognizance of the writ in all cases. The Common Pleas, being a court of civil jurisdiction only, was supposed, prior to the statute 16 Car. 2, to have but a partial jurisdiction of it. If a party were privileged in that court as being, or supposed to be, an officer or suitor of the court, the writ might, at common law, have been awarded from that court. So with the Exchequer. But if he were committed for any criminal matter, those courts could only have remanded him or taken bail for his appearance in the court of King's Bench.

In Jones' case, 2 Mod. 198, an application for the writ was made to the Common Pleas for Jones, who was committed to

prison by warrant from a justice of the peace. "The chief justice doubted that a writ of *habeas corpus* could not be granted in this case, because it was in a criminal cause, of which the court of Common Pleas hath no jurisdiction," and the writ was refused.

In Woods' case, 3 Wils. 172, where the party was in custody under color of civil process, and was a case between subject and subject, the writ was awarded.

If the writ issued out of chancery, and on return thereof the lord chancellor found that the party was illegally restrained of his liberty, he might discharge him ; or if he found it doubtful, he might bail him ; but then it should be to appear in the King's Bench, for the chancellor had no power in criminal cases. 2 Toml. Law Dict. 64 ; Crowley's case, *supra.*

The Common Pleas having jurisdiction of the writ so far as concerned its civil jurisdiction, in many cases awarded it, and if it appeared, by the return, that the party was illegally imprisoned, it was held that the court should discharge him, although imprisoned for a supposed criminal matter, because the court could not *salvo juramento suo* remand him to that unjust imprisonment, or, in other words, could not refuse to discharge him. Bushell's case, Vaughan, 155.

This distinction, that the authority of the court over the writ depends upon the nature of the jurisdiction of the court itself in respect to criminal cases, and the nature of the cause of the detention of the person on whose behalf the application is made, is fully recognized in *Ex parte Tobias Watkins*, 3 Peters (U. S.) R. 193. Mr. Chief Justice MARSHALL says : "This application is made to a court which has no jurisdiction in criminal cases ; 3 Cranch, 169, which could not revise this judgment ; could not reverse or affirm it were the record brought up directly by writ of error." * * "The writ of *habeas corpus* is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause. It is in the

nature of a writ of error to examine the legality of the commitment." * * "We have no power to examine the proceedings on a writ of error, and it would be strange if, under color of a writ to liberate an individual from unlawful imprisonment, we could substantially reverse a judgment which the law has placed beyond our control."

The circuit courts of this State possess an original common law jurisdiction in criminal cases answering to that of the King's Bench. Consequently, if our *habeas corpus* act had never been passed, jurisdiction of the writ would have devolved upon the circuit courts by the common law. All of that jurisdiction is expressly conferred by the constitution of 1870 upon the criminal court of Cook county; so that it possesses all of the authority over the writ given by the common law, and the first section of the *habeas corpus* act, R. S. 269.

There can be no doubt but Brown, on whose application the writ was issued in the criminal court, was committed and detained upon a supposed criminal matter. He had been arrested and was detained under a warrant issued on the 14th day of August, 1871, by a justice of the peace, on the oath and complaint of relator, Hickey, charging him with the commission of burglary in the State of Indiana, and with being a fugitive from justice. This was under the statute concerning fugitives from justice, R. S. 262. The 4th section of that statute declares that, whenever any person in this State shall be charged, upon the oath or affirmation of any credible witness, before any judge or justice of the peace, with the commission of any murder, rape, robbery, burglary, arson, larceny, forgery or counterfeiting, in any other State or territory of the United States, and that said person hath fled from justice, it shall be lawful for the said judge or justice to issue his warrant for the apprehension of said person. If, upon examination, it shall appear to the satisfaction of such judge or justice that the said person is guilty of the offense alleged against him, it shall be the duty of such judge or justice to commit him to the jail of the county; or if the offense is bailable, according

26—60TH ILL.

to the laws of this State, to take bail for his appearance at the next circuit court holden in that county.

The offense with which Brown was charged was burglary, and which is bailable according to the laws of this State. If bail had been taken, and to give which might have been the object of the writ he sued out, such bail would be required by the very clause of the constitution extending the criminal jurisdiction of the recorder's court, to be taken to the criminal court.

Nor does it affect the question of jurisdiction that the crime with which he was charged was committed in another State. The case for his arrest arose in Cook county. The courts or magistrates here have authority to deal with the person so charged only to a certain extent. Not to try and punish him, but to secure him for extradition. But he is committed and detained for a criminal or supposed criminal matter, within the meaning of the first section of the *habeas corpus* act. The criminal court, says the constitution, " shall have the jurisdiction of a circuit court in all cases of a criminal or *quasi* criminal nature arising in the county of Cook, or that may be brought before said court pursuant to law." The word *quasi* " is a latin word, in frequent use in the civil law, signifying *as if almost.* It marks the resemblance, and supposes a little difference between two objects." 2 Bouv. Law Dict. 411. The word " criminal," as here used to define the nature of the cases of which the court has cognizance, means relating to or having the character of crime. The jurisdiction conferred, therefore, includes every species of case relating to crime, and also such as are regarded by the law *as if* a crime, though a little different, like cases of bastardy. Any such cases, therefore, arising within the county of Cook, or that may be brought before said court pursuant to law, are within its jurisdiction. Besides, it also has appellate jurisdiction over all inferior courts in the county in every case of the nature indicated, wherein an appeal is given by law.

The objection made, that there was no jurisdiction because the crime with which Brown was charged did not arise in Cook county, is untenable. The true questions are: was it a case of a criminal nature, and was it brought before the court pursuant to law? That it was of a criminal nature is beyond doubt, and if the court had jurisdiction of the writ of *habeas corpus*, and one was properly issued and served, then it was brought before the court pursuant to law.

Suppose that, instead of charging Brown with having committed burglary in one of the States or territories of the United States, relator had charged him with having committed such offense in one of the Canadas, and the justice, upon examination, had committed him to jail. That would have been an excess of jurisdiction, and entitled Brown to a discharge upon *habeas corpus*. But would it not have been a case arising in Cook county, and of a criminal nature?

The statute, as we said above, does not purport to provide for the trial and punishment of an offense committed in another State or territory, but only the means of securing the offender. Whatever is done to that end constitutes the case, and it arises where the party is found and proceeded against.

We are clearly of the opinion that the criminal court had authority to issue the writ of *habeas corpus*.

It is declared by statute that, "any process which may be issued by any of the clerks of the said circuit courts, or any judge thereof, in pursuance of law, shall be executed by the officer or person to whom the same shall be directed, in any county or place in this State, in the same manner that process usually is or may be required to be executed and returned; and the said circuit courts shall respectively have power to punish all contempts offered by any person or persons to them while sitting as such, at any regular or special term aforesaid, and for disobeying any of its process, rules or orders issued or made conformably to law." (Gross' Stat. 177.)

There is also undoubted authority at common law to punish as a contempt, for disobedience of the writ of *habeas corpus.* Crowley's case, 2 Swanst. *supra.*

The court below having jurisdiction of both the writ of *habeas corpus* and the attachment, and having heard evidence, both as to the service of the writ of *habeas corpus* and disobedience of its command, the determination of the court below on those matters is conclusive. What that evidence was is not before us and can not be properly brought here in this proceeding. We must presume, in its absence, that it showed a service of the writ; and such a wilful disobedience or evasion of the writ as amounted to a contempt of the authority of the court.

For these reasons the relator must be remanded.

*Remanded.*