### Davis' Executors v. Cathey.

1. A security in a bond for the appearance of an insolvent debtor to
   render his schedule, &c. under the act of 1821, is not liable if the
   debtor does appear and obtain his discharge, although it be fraudu-
   lently obtained, provided the security be not a party to the fraud.
2. Such defence may be pleaded to an action on the bond.

RANSOM DAVIS and PERSON DAVIS, executors of
William Davis, deceased, sued out a writ in debt in the
Circuit Court of Dallas county, against Samuel G. Nor-
ris, Alexander Cathey, Tilman Hitt, and Matthew
M'Clellan, to recover on a bond made by them the 1st
July, 1822, in the penalty of $605, payable to Joseph
Graham, sheriff of Dallas county, and by him assigned
to the plaintiffs as executors; with condition that, " where-
as the said Norris had been charged and taken in custody
by said sheriff, on a *ca. sa.* issued against him and others
at the suit of said William Davis; and had applied for
the benefit of the insolvent laws to N. Sargent, Judge of
the County Court of Dallas county, who had appointed
the 15th July as the time for his appearance to render his
schedule and take the insolvent oath as required and
allowed by law. Now if said Norris shall personally
appear before said Judge at the time and place aforesaid,
and make surrender in such manner as is required by
law of his property and effects, for the benefit of his
creditors, then to be void, else in full force."

The writ was served on Cathey only, and declaration
filed against him alone, alleging the judgement, charging
in execution, bond and assignment thereof, &c. and as-
signing for breach, that Norris had failed to give up the
sum of $300 in cash, which he had received of one
Ezell, and also to surrender a certain horse worth $100,
bought of said Ezell, likewise a quarter section of land,
his property, of the value of $100, and that he did not

take the oath as required and prescribed by law, &c.
Cathey pleaded that " on the 15th July, 1822, Norris did
appear before N. Sargent, the Judge, &c. at the proper
time and place, when such proceedings were had before
said Judge, that by his consideration and judgement,
Norris was then and there discharged from imprisonment,
and his person freed from arrest, as appears by the re-
cord thereof remaining in Court, and the certificate of
said N. Sargent under his seal, now here shewn; which
order and judgement remain in full force, not reversed
or set aside," &c. The plaintiffs demurred generally to
the plea, and also specially for cause. 1st That a per-
formance of the condition of the bond is not alleged.
2d That the plea does not allege that Norris rendered a
schedule of his property, or that he gave it up for the
benefit of his creditors. The Court at October term,
1825, overruled the demurrer and gave judgement for
the defendant, from which judgement the plaintiffs ap-
pealed to this Court, and assign for error that the de-
murrer was overruled, whereas judgement should be
given thereon for the plaintiffs.

Davis
v.
Cathey.

H. G. PERRY, for the plaintiffs.

HITCHCOCK, for the defendant.

JUDGE WHITE delivered the opinion of the Court.

WHETHER we apply this demurrer to the plea or carry
it back to the declaration, it is obvious that the point pre-
sented for our consideration is simply this, whether the
fraudulent act of the debtor in not rendering a true
schedule of his property to the Judge, before whom he
took the oath of insolvency, and obtained a discharge
under the provisions of the act of 1821, [a] can subject his    [a] Laws Ala. 320.
security to suit upon the bond, when the latter had no
agency in the fraud? On the part of the plaintiff, it is
urged that the security binds himself in such a case, not
merely for the formal appearance and rendering of a
schedule by the debtor, but for the honesty of his princi-
ple in the transaction; and consequently, if the debtor by
fraud obtains a discharge, the security is, notwithstanding
such discharge, liable upon his bond. On the contrary,
it is contended that the discharge being the act of a
Court of competent jurisdiction, it remains, while unre-
versed, valid so as to acquit the security from liability

JANUARY 1828.

Davis
v.
Cathey.

a 3 Cranch 300,

on the bond, unless he colluded with the debtor in pro-
curing the fraudulent discharge. In support of this last
position, the case of Sims and Wire against Slacum [a]
has been relied on. That case was this : Sims as princi-
pal, and Wire as security, were bound to Slacum in a
prison bound bond, taken under the laws of Virginia;
the condition of which was, that Sims, the debtor, should
keep within certain limits until discharged by due course
of law. Sims was discharged by the proper authority,
and went at large. A suit was instituted on this bond,
and upon the defendants pleading this discharge, the
plaintiff in the inferior court offered evidence tending to
prove that it was obtained by several acts of fraud on the
part of the debtor. That Court upon this evidence charg-
ed the jury in effect, that those fraudulent acts on the
part of the debtor would invalidate the discharge and
render it unavailing as a defence to the suit. A judge-
ment was accordingly rendered for the plaintiff, and the
case presenting this aspect taken to the Supreme Court
of the United States. It was there determined that such
a discharge, though obtained by fraud, was a discharge
in due course of law, and absolved the security from
liability on the bond, unless he colluded with the debtor
in the fraud ; that an act, which was the result of a
judgement of a Court of competent jurisdiction, was
valid, though obtained by fraud, as to the rights of third
persons who had not co-operated in the fraud. All this
is admitted, but it is urged that the present case is so
evidently dissimilar to that in Cranch, that the principles
of the one do not apply to the other.

Upon examination of the Digest, it will be found that
our statutes, previous to the one under which this bond
was taken, resemble in every material respect the law of
Virginia, upon the construction of which the decision
just cited was rendered. Here, as in Virginia, the prison
rules were allowed to unfortunate debtors, upon giving
bond to keep within the same until discharged by due
course of law. And the latter part of the thirteenth
section of the act of 1807, provides expressly that such
prisoners shall be entitled to the benefits of that act.
These benefits are, as appears from the preceding part
of the same section, the privilege of obtaining a dis-
charge by rendering in upon oath a schedule of all their
property for the benefit of their creditors. Then, accord-

JANUARY 1828.

Davis
v.
Cathey.

ing to the case cited, if a prisoner were by fraud to conceal a portion of his property, and yet effect his discharge by a false schedule and oath, this discharge would, beyond all doubt, be a bar to an action on the prison bound bond against his security, unless the latter had an agency in procuring it; because it would be a discharge, though faudulently obtained, in due course of law. It only remains to see whether the act of 1821 and this bond taken under it, are freed from the operation of the principles which control the construction of our previous statutes, made for the benefit of insolvent debtors, and of which the last act is merely amendatory. To this end, it will be proper to advert to some other principles than those already mentioned, settled in the case from Caench. There it was laid down that, in construing bonds given by virtue of statutes made for the benefit of insolvent debtors, we must never lose sight of the intention of the acts themselves. Furthermore it was held, that the intention of all these statutes is not to *increase the securities* or enlarge the rights of the creditor, but to promote the benefit of the debtor, by indulging him in the enjoyment of his liberty as far as compatible with the previous claims of his creditor. The principle applies with all its bearing to the act of 1821; inasmuch as that act contemplates and allows the entire freedom from arrest of the debtor if he will give a bond with security, to appear at a time and place specified, and surrender upon oath, as required by the then existing laws, a schedule of his property for the benefit of his creditors. This law then, tested by this principle, will be seen to mean nothing more than those which it professes to amend, except a further exemption of the debtor from imprisonment. It creates no new security for the creditor. The other statutes permitted the creditor to confine the body of his debtor within the bounds, upon security, till he should discharge himself by a surrender of all his property upon oath. This allows the same, unless he will give bond and security to surrender in like manner. In both cases the law expects a true and honest schedule, and to effect this, the solemn obligations of an oath are required. But it is granted that if a debtor within prison rules obtains his discharge by a false schedule, or other fraudulent means, his security is not liable to the creditor. Why then should he not, in a case like the present, be exempted? The discharge is

as much the act of a competent authority in the one case as in the other, and therefore should operate alike to his benefit in each case, if he has not joined in the fraud.

This view of the subject is strengthened by the fact that the statute requires notice to be given to the creditors of the time and place of procuring the discharge. Such a provision in effect makes them parties to the question of discharge, and has no meaning unless it is intended to arm them with the privilege of examining and questioning the correctness of the schedule. It is also more rational to confide this matter to the creditors than the security, because they are presumed to know more about the property of their debtor with whom they have debts and made contracts, and to be more interested in an honest surrender of it, than the security can be. A different doctrine too would result in this, that the smallest degree of dishonesty on the part of a debtor in rendering his schedule, would subject an innocent security to the payment of the whole debt. Such liability once established and known, would prevent all but the most incautious from subjecting themselves to it; and the inevitable consequence would be, that this law, intended to favor and enlarge human liberty, and not to give new securities to creditors, would be mainly if not entirely defeated in its benevolent purposes. I am then of opinion, that a discharge of the debtor under the provisions of the act of 1821, though fraudulently obtained by him, but without the collusion of his security, exempts the latter from liability upon his bond, and may therefore be pleaded in bar to such an action as the present. And in this opinion the Court are unanimous.

JUDGES CRENSHAW and PERRY not sitting.

Judgement affirmed.