RUST ET AL. *vs.* PAINE.

1. The bond of a debtor, conditioned for his appearance before two justices to take the benefit of the act for the releif of insolvent debtors, is not forfeited, if, after ten days' notice to the creditor, he appears at the time and place appointed, with the intention of complying with its condition, but is prevented from doing so by the failure of one of the justices to attend.

2. The transfer of property by a debtor, after his arrest and the execution of a bond to take the benefit of the act for the releif of insolvent debtors, does not constitute such a breach of the condition of the bond as can be inquired into in an action on it against the debtor and his security.

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

DEBT on bond by defendant against plaintiffs in error, commenced in a justice's court and taken by appeal to the Circuit Court of Mobile. The bond sued on was executed on the 10th March 1846, and, after reciting that the plaintiff in error, Rust, had been arrested by a constable under a *capias ad satisfaciendum*, and that he had applied to J. A. Roberts and S. T. Douglass, two justices of the peace, for the benefit of an act entitled "an act amendatory to the laws now in force for the releif of insolvent debtors," who had appointed the 9th day of May 1846, at the hour of 12 o'clock, at the office of said Roberts, to hear the application, is conditioned, "that if the said Rust shall well and personally appear and make surrender in such manner as is required by law of his property and effects, for the benefit of his creditors, at the time and place above appointed, then this obligation to be void," &c. The evidence tended to show that a few days after the execution of the bond, the defendant in error was informed of it and had notice of the time and place appointed to hear the application. It was proven that Rust appeared at the time and place appointed, but of the two justices Roberts alone was present, who, without any schedule of property and effects being rendered by Rust, administered to him the oath, "that the particular grounds upon which he was arrested were untrue, and that he had nei-

ther moneys, estate or effects wherefrom to satisfy said debt, or liable for the same," and thereupon discharged him. The defendant in error was not present. There was evidence conducing to show a transfer of property after the bond was given, and before his appearance at Roberts' office. The court charged the jury that the oath which Rust took would not discharge him and his security from their liability on the bond.

The defendants' counsel asked the court to charge the jury "that if Rust appeared at the time and place specified in the bond for his appearance to take the benefit of the insolvent laws, to be heard, and was then and there discharged by the magistrate, even if the discharge was fraudulent, the discharge released the security from his liability on the bond," which charge the court refused to give, stating that it was abstract and not warranted by the evidence, and then instructed the jury "that if the oath which Rust took had been the oath which the law requires, he would not have been discharged legally, because he was discharged by one magistrate, when the law requires two—therefore the plaintiff had a right of action both against Rust and his security."

To the charges given and to the refusal to charge as asked, the defendants excepted, and now assign them as error.

CAMPBELL, for plaintiffs in error:

1. The attendance of Rust for the purpose of complying with the conditions of the bond executed by him, and his compliance being defeated only by the non-attendance of the magistrate, discharge him and his securities from the forfeiture of the bond. 3 Ala. Rep. 404; 7 ib. 104.

2. The attendance of Rust for the purpose of complying with the conditions of his bond, and the oath taken by him before Joel A. Roberts, was a compliance with the conditions of the bond, and is a discharge to him and his sureties. The State v. Love, 4 Ired. 434.

3. The statement of the plaintiff is defective, and the demurrer should have been sustained. The statement does not purport to be founded on the bond, but simply declares for the money due on it. The amount due is not set out *in numero*, as is required in an action of debt. There is no description

of the bond by the date—the amount of the condition—the nature of the condition. The legal conclusion of the party as to the nature of the bond is set out in the statement, without a statement of the facts.

RAPIER, for defendant:

1. The charge given by the court touching the insufficiency of the oath made by Rust, the principal in the bond, to discharge him and his surety, was correct. Such an oath was not a compliance with the condition of the bond, nor could it operate as a release of principal or surety. 8 Ala. 288.

2. The charge asked by the defendant's counsel was correctly refused, for although a fraudulent discharge might, in our view of it, release a surety, yet in this case the principle could not apply, for here there was no discharge whatever.— The proceeding was, as it were, *coram non judice*.

3. The charge to the jury, as last set forth in the bill of exceptions, that a discharge given by one justice of the peace was insufficient, when the law required two, was not error; and though it were abstractly incorrect, it would not be a ground for reversal, because it did not prejudice the cause of the defendant.

COLLIER, C. J.—The Act of 1821 enacts that when any person, who may be taken on mesne process, or be charged in execution, shall desire to deliver up his property for the benefit of his creditors, in order to be discharged from arrest or execution, he shall enter into bond with surety, for the amount for which he shall be taken in custody or charged in execution, to the sheriff, &c., conditioned that he will appear and make surrender, in such manner as is required by law, of his property or effects for the benefit of his creditors, at such time and place as may be designated by the judge or two justices of the county, where such person may make his or her application: *Further*, the applicant, coming before the judge or justices at the time and place appointed, shall subscribe and deliver in a schedule of his whole estate, and make oath to the effect of that now required by law, in relation to insolvent debtors, with the exception of such articles as are or hereafter by law may be reserved to every family, or be exempted by

law from seizure or execution. Whereupon such debtor shall be discharged by warrant from the judge or justices, to whom the application may be made. The act also provides that the debtor's bond shall be assigned to the plaintiff, and if it should be forfeited, the sheriff or other officer taking the same shall, within ten days thereafter, return it to the clerk's office of the county from which the mesne process or execution issued, or to the justice of the peace who issued such process or execution, with an endorsement on the bond that the same is forfeited. Clay's Dig. 275, 277, §§ 9, 10, 14. The previous enactment of 1807 requires that ten days' notice shall be given to the plaintiff at whose suit the debtor, desiring to be discharged, shall be in custody, prescribes the oath to be taken, and the manner in which the schedule shall be made and subscribed. Clay's Dig. 272, § 2.

In Davis' Ex'rs v. Cathey, 1 Stew. Rep. 402, it was decided that the fraud of the debtor, in not rendering a true schedule of his property to the judge before whom he took the oath of insolvency, and obtaining a discharge under the act of 1821, cannot subject his security to suit upon the bond, when the latter had no agency in the fraud. Bridges v. Hobson, 3 Ala. R. 404, was an action against the surety of a party who had entered into bond to appear before two justices of the peace to take the oath of insolvency under the act of 1821; the defence relied on was, that at the time appointed the principal obligor offered to take the oath and render a schedule of his property. This court said, " The notice being sufficient, the principal obligor offering to perform the condition of the bond was in law a performance. It was not in the power of the debtor to compel the justices to act, to administer the oath and receive his schedule. This is not like the case of one who covenants that another shall do a particular act; in that case, he cannot say that he had no control over the action of such person, as an excuse for its non-performance, but is bound to procure the act to be done. In this case, a benefit is by law conferred on the debtor, provided he does certain acts, the performance of which cannot be effectual without the concurrence of the two justices of the peace. Now, as it is not in his power to control the action of the magistrates, an offer to perform must in

law be a performance, at least so far as to prevent a breach of the condition of his bond."

In Anderson v. Rhea, 7 Ala. Rep. 104, it was conceded that the returns of sheriffs cannot be collaterally impeached in ordinary cases; but where they are declared by statute to have the force and effect of judgments, this stringent rule does not apply. Consequently, it was held allowable to show that the return of a sheriff, that the bond is forfeited, is false, by proving that the defendant was ready on the day and at the place named in the bond to deliver certain property which had been levied on by execution, and for the return of which the bond stipulated.

The case of Monon and Nelson v. Weaver and Frow, 8 Ala. Rep. 288, is unlike the present. There the condition of the bond was to keep within the limits of the prison bounds, until the principal obligor should be thence discharged by due course of law, without committing any escape in the meantime. We held that a plea in avoidance, on the ground of a discharge under the statutes relating to insolvent debtors, is bad, if it does not aver that notice was given to the creditor, and that the discharge was the act of a judge or two justices of the peace, as contemplated by the act of 1821. The bond in the case cited, it will be observed, does not stipulate for the appearance of the debtor at a time and place prescribed, to take the benefit of the insolvent law, before certain designated officers; but requires him to keep within the prison bounds until he shall be discharged by due course of law. It is perfectly clear, that a compliance with his undertaking required that if he would relieve himself from the obligation, he should deliver a schedule of his property and take the oath of insolvency before the officer or officers appointed by the law to administer it, after having given the regular notice.

In the case at bar, the condition of the bond recites, that the officers named therein had designated a day when the debtor should appear and deliver his schedule and take the oath. If he gave the notice and appeared at the time and place appointed in good faith, and one or both the justices failed to attend, the condition was not forfeited. This is sufficiently shown by the cases cited from 3d and 7th Ala. Rep. There was evidence in respect to the notice, which should have been

Rust et al. v. Paine.

submitted to the jury; but the Circuit Court, irrespective of this evidence, informed them that the discharge was irregular, and they should find for the plaintiff. We may place out of view the form of the oath administered, and the fact that the discharge was the act of a single justice; for the appearance of the debtor according to the terms of his bond, if notice had been given to the plaintiff, and he intended to comply with its condition, prevented a breach. The *quo animo* he appeared, was a question of fact for the solution of the jury, but their inquiries were forestalled by the ruling of the judge; they were not permitted to consider the sufficiency of the notice, or the purpose with which the debtor presented himself at the time and place designated by the bond. The charge diverted their attention from the appearance of the principal obligor, by explicitly instructing them that a discharge by one justice, when the law required two, and the oath which he had taken, were irregular and insufficient. In fact the court considered a prayer for instructions abstract, which assumed that the appearance of the debtor at the time and place specified in the condition of his bond, "to be heard," and his discharge by a single justice, though fraudulent, absolved the surety from liability. The cause went to the jury, if not upon a false hypothesis, at least upon such a view of it as was calculated to give them an incorrect idea of its merits, and withdraw from their consideration a perfectly available defence. It is clear they were misled, and that the defence suggested by the evidence has not been passed on.

In this action it is not permissible to enquire whether, the debtor after his arrest and the execution of the bond made a transfer of his property; however this may be, it constitutes no breach of the condition. It might perhaps have been urged before the justices had they met according to their appointment, and the plaintiff may in some other proceeding assert its invalidity.

The statement of the plaintiff's cause of action is in very general and indefinite terms, and if the suit was one instituted in the circuit or county court, we should be inclined to hold it bad on demurrer. But as the issue in appeals from justices of the peace is to be made up under the direction of the court, and great liberality is allowable in such cases, we think the

court might have either overruled or sustained the demurrer, without committing an error for which the judgment would be erroneous.

It is needless to add more than declare that the judgment is reversed, and the cause remanded.