# Commonwealth *ex rel.* John B. Butler *versus* John F. Hartranft, Governor of Pennsylvania.

1. Under section 3d article 5th of the Constitution of 1873, the jurisdiction of the Supreme Court in mandamus is expressly restricted to *courts of inferior jurisdiction.*

2. The 11th sect. of the Schedule to the new Constitution does not continue the jurisdiction of the Supreme Court in the cases mentioned in sect. 3d, art. 5th, of the new Constitution, until December 1st 1875.

3. The courts whose jurisdiction by the Schedule is to remain unabridged, are those only whose existence is to continue until December 1875, and which are " courts of record and existing courts not specified in the Constitution."

4. The Supreme Court, the Common Pleas, Oyer and Terminer, Quarter Sessions and Orphans' Court, are permanent courts, to continue whilst the Constitution is unchanged.

November 18th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

In the Supreme Court of Pennsylvania, Western District : Of October and November Term 1874, No. 293.

This was a petition by John B. Butler for a mandamus against John F. Hartranft, Governor of Pennsylvania, to issue a commission to the petitioner as a justice of the peace for the borough of Butler, in the county of Butler, to which office he alleged he had been duly elected on the 17th of February 1874.

The defendant having demurred to the jurisdiction of the Supreme Court, it is unnecessary to state the grounds of the complaint, as set out in the petition.

The demurrer was as follows :

" That section 3d of article 5, of the Constitution, provides that ' the jurisdiction of the Supreme Court shall extend over the state, and the judges thereof shall by virtue of their offices, be justices of Oyer and Terminer and General Jail Delivery in the several counties ; they shall have original jurisdiction in cases of injunction where a corporation is a party defendant, of habeas corpus, of mandamus to courts of inferior jurisdiction, and of quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the state, but shall not exercise any other original jurisdiction ; they shall have appellate jurisdiction by appeal, certiorari, or writ of error in all cases, as is now or may hereafter be provided by law,' and that therefore this court hath not jurisdiction of the bill of complaint filed by the plaintiff."

*J. N. Purviance, T. Robinson, Thompson & Scott,* for relators.

*L. D. Gilbert,* Deputy Attorney-General (with whom was *Dimmick,* Attorney-General), for respondent.

Chief Justice AGNEW delivered the opinion of the court, November 21st 1874.

[Commonwealth v. Hartranft.]

Waiving the form of this application, which seems to be rather a bill in equity than a common-law petition, we may come at once to the demurrer filed, and on which issue is taken by the relator. The relator, John B. Butler, asks us to issue a mandamus to the Governor, requiring him to commission the relator as a duly-elected justice of the peace. The demurrer denies the jurisdiction of the Supreme Court to issue the writ of mandamus. By the 3d section of the 5th article of the new Constitution, the Supreme Court "shall have original jurisdiction in cases of injunction where a corporation is a party defendant, of habeas corpus, of mandamus to courts of inferior jurisdiction, and of quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the state, but *shall not* exercise any other original jurisdiction." It is plain that this section confines our jurisdiction in cases of mandamus to the courts of inferior jurisdiction within the state. But it is argued that our former jurisdiction, which was ample, and extended to all cases of mandamus under the former Constitution, is preserved until the first day of December 1875, by virtue of the 11th section in the Schedule to the new Constitution. It provides as follows: "All courts of record and all existing courts, which are not specified in this Constitution, shall continue in existence until the first day of December in the year one thousand eight hundred and seventy-five, without abridgment of their present jurisdiction, but no longer." This is followed immediately by a provision abolishing the court of first criminal jurisdiction for the counties of Schuylkill, Lebanon and Dauphin, without waiting until the 1st December 1875. It is contended that the Supreme Court is included within the terms "all courts of record," and its jurisdiction thereby continued until December 1st 1875. But clearly this is not true, for in the 11th section, just quoted, the continued *existence* of the courts described in it, until December 1st 1875, is as much a predicate as the unabridged jurisdiction. It is quite evident that the courts referred to in the section are those only which are to continue until the 1st of December 1875 and no longer. The obvious purpose of the section was to continue the courts described in it, until the time fixed for their expiration, with unabridged jurisdiction until that time; and then that the courts themselves must cease to exist. The question therefore is what courts are referred to by the words "all courts of record, and all existing courts." The answer seems to be clear, they are those, in the language of the section, "which are not *specified* in this Constitution." The Constitution had already created certain permanent courts, which may therefore be termed constitutional courts; such as the Supreme, the Common Pleas, Oyer and Terminer and General Jail Delivery, Quarter Sessions, and Orphans' Courts. These were to endure while the Constitution remained unchanged; and being thus permanently

[Commonwealth *v.* Hartranft.]

established by the Constitution itself, it is not to be supposed that the Schedule was intended to end them.   The Schedule, being a temporary provision to carry the new Constitution into effect, by bridging the chasm between it and the old, cannot be interpreted to supplant the Constitution altogether.   The 11th section was therefore intended to apply to courts of record, and other existing courts not "specified" in the Constitution.   Of these there are several—such as the courts held at Johnstown, Scranton and Carbondale.   All such courts are, by the 11th section, to continue in existence, with unabridged jurisdiction, until December 1st 1875. If the words "all courts of record" embrace all existing courts of record, they will contradict and derange the system as to the District Courts of Philadelphia and Allegheny, which are "specified" courts terminating on the organization of the new courts of Common Pleas on the first Monday of January 1875.   The interpretation derives further force from the immediate abolition of the Criminal Court of Schuylkill, Lebanon and Dauphin counties, in the same section; and also from the next section (the 12th), which abolishes all the then existing Registers' Courts on the first day of January 1875.   This being the true interpretation, so far as we can discern it, of this very dubious section eleven, and the Supreme Court being one of continuous existence, not to end on December 1st 1875, its jurisdiction in original matters is defined and fixed by the 3d section of the 5th article.   That having excluded the jurisdiction by mandamus over others, than the courts of inferior jurisdiction, by the express negative words, "but *shall not* exercise any other original jurisdiction," the demurrer must be sustained.   This result is to be deplored, as depriving the people of one of the highest forms of remedy essential to the interests of a republic, and must drive every one to the seat of government, into a local court, to maintain the rights of the people against state officers, subject to all the delays which flow from the right of appeal.   But it cannot be helped, so long as the restrictive provisions of the 3d section of the 5th article remain.

Judgment is therefore given upon the demurrer for the defendant, John F. Hartranft, Governor, and that he recover his costs in this behalf expended.