# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF NORTH DAKOTA

---

HUGH DOHERTY *vs.* THE COUNTY OF RANSOM:

Opinion filed March 15th, 1895.

**Delegation of Legislative Power—When Void.**

> Chapter 55, Laws 1890, which delegates to boards of county commissioners the power to fix salaries of state's attorneys, is in contravention of section 173 of the constitution of North Dakota, which requires the legislative assembly "to prescribe the duties and compensation of all county, township, and district officers," and is therefore void.

**Constitution Did Not Repeal Existing Statutes.**

> The adoption of the foregoing provision in the constitution did not in itself repeal the pre-existing statute, valid when enacted, and which gave to boards of county commissioners power to fix the salaries of state's attorneys, and such boards may continue to exercise such power until the legislative assembly prescribes such compensation by statute as required by the constitutional provision.

Appeal from District Court, Ransom County; *Lauder*, J.

From an order of the board of commissioners of Ransom County, disallowing his claim for salary of state's attorney, Hugh Doherty appealed to the District Court. The appeal having been dismissed, appellant appeals.

Affirmed.

*Hugh Doherty*, for appellant.

*Goodwin & Van Pelt*, for respondent.

N. D. R.—I

BARTHOLOMEW, J.   The controversy in this case arises out of the following facts:   The plaintiff was the duly elected and qualified state's attorney in the defendant county, and entered upon the duties of his office, January 3, 1893.   Prior to that time, and prior to the time that North Dakota became a state, the board of county commissioners of said county, acting under the provisions of § 431, Comp. Laws, fixed the salary of the district attorney for that county at $800 per annum.   Section 173 of the state constitution, subsequently adopted, contains the following: "The legislative assembly shall provide by law for such other county, township and district officers as may be deemed necessary, and shall prescribe the duties and compensation of all county, township and district officers."   Subsequently the legislative assembly passed an act known as Ch. 55, Laws 1890, the first section of which reads as follows:   "The board of county commissioners, at their quarterly meeting in the month of July, or at some special meeting during said month next prior to each and every general election, shall fix the amount of salary which shall be received by every county officer for the ensuing term, whose salary is fixed by the board of county commissioners, and is entitled by law to receive a salary, payable out of the county treasury.   And the salary so fixed shall not be increased or diminished during said term of office.   This section shall not apply to any county wherein the salaries of its officers have been provided and fixed by law."   Under this statute the board of supervisors of said defendant county in July, 1892, fixed the salary of state's attorney at $500 per annum.   At the end of his first quarter year's service as state's attorney, plaintiff presented his bill for salary to the county commissioners, at the rate of $800 per year.   This the board refused to allow, but did allow the claim at the rate of $500 per year.   From this action plaintiff appealed to the District Court, where his appeal was dismissed, and from such judgment of dismissal he appeals to this court. He bases his claim for the larger salary upon the ground that the section of the constitution heretofore quoted devolved upon the

legislature the duty of fixing the salary of state's attorney, and prohibited the legislature from delegating that power to the board of county commissioners, and that consequently Ch. 55, Laws 1890, is unconstitutional and void; and that, as the legislature never has fixed the salary of state's attorney, the salary prevailing at the time of the adoption of the constitution must remain as the salary of that office until changed by the legislature. The respondent contends that said chapter 55 is in all respects a valid enactment, and that the constitutional provision already quoted is but a grant of power to the legislature, and the grant of a power which the legislative branch of the government would have possessed, and does possess, without the constitutional grant; but that the right of the legislature to delegate to municipalities the power to fix the compensation of local municipal officers has been so often asserted by the courts that it no longer remains an open question. It is no doubt true that the legislative branch of government possesses the power to prescribe the compensation of municipal officers without any constitutional grant of such power, and it is equally true that the power thus possessed can, in the absence of all inhibition, be delegated to the municipalities created by legislative authority. Cooley, Const. Lim. (5th Ed.) 228 *et seq.*; 2 Am. and Eng. Enc. Law, p. 699, and notes; *Ryan* v. *Outagamie Co.*, 80 Wis. 336, 50 N. W. 340. But we are constrained to view our constitutional provision, not as a grant of power, but as a limitation upon power. As we have said, no grant of power was required. If that were the purpose, the language was superfluous. The words used are not the words usually employed to confer power. For that purpose the constitutions generally, if not universally, use the word "may." Here the mandatory word "shall" is used. The connection is also suggestive. The constitution says: "The legislative assembly * * * shall prescribe the duties and compensation of all county, township and district officers." It will not be contended for a moment that under this language the legislature could delegate to a board of county commissioners the power to

prescribe the duties of a state's attorney, and yet the words are so connected that they will not admit of a construction that places the legislature in one relation to the duties of county officers and another relation to their compensation. One phrase covers both, and one intention covers both, unless the constitutional convention was guilty of juggling with words. The propriety of having duty and compensation prescribed by one and the same authority is too evident to require mention. In *Dougherty* v. *Austin,* 94 Cal. 601, 28 Pac. 834, and 29 Pac. 1092, the court had under consideration the corresponding provision in the California constitution. That provision is perhaps somewhat clearer as to the intention of the constitutional convention than ours. It provides that the legislature "shall regulate the compensation of all such officers in proportion to their duties and for that purpose · may classify the counties by population." There the legislature is required to regulate compensation in proportion to duty. Here it is required to prescribe the duties and the compensation clearly, with the thought that the latter would be commensurate with the former. We think the two provisions should receive the same construction. The California court held that a statute delegating to the board of county commissioners power to increase the pay of a county officer under certain circumstances was void, being in contravention of their constitutional provision, and the dissent of Judges McFarland and Patterson was as to the effect of the statute. The judges were unanimous, as we gather, in holding that the legislature could not delegate the power to fix compensation, and this holding was affirmed in *People* v. *Johnson,* (Cal.) 31 Pac. 611. Under these authorities, as well as under the wording of our constitution, we hold that Ch. 55, Laws 1890, which empowered boards of county commissioners to fix the salaries of state's attorneys, was a violation of section 173 of our constitution, and void.

But there is yet another point in the case. The respondent contends that, if said chapter 55 be unconstitutional, the law existing prior to statehood, which empowered county commis-

sioners to fix the compensation of state's attorneys, remains in force until such time as the legislature shall act under the constitutional provision, and fix such compensation by legislative enactment; that section 2 of the schedule of the constitution, which says "all laws now in force in the Territory of Dakota, which are not repugnant to this constitution, shall remain in force until they expire by their own limitations or be altered or repealed," continued the prior law (the validity of which is not questioned) in force; that the limitation contained in section 173 of the constitution was prospective only; that while the legislature could not thereafter delegate to boards of county commissioners the power to fix compensation, yet the limitation, standing alone, was powerless to repeal an existing power legally resting with such board. And the further point is urged that, if the constitutional limitation repealed the former law, then the office of state's attorney was left without any salary attached whatever, and in either view the action of the trial court must be affirmed. To this contention the appellant responds that the prior law which empowered the board of county commissioners to fix the salary of state's attorney was repugnant to the constitutional limitation which required the legislature to fix such compensation, and was, by the adoption of the constitution, to that extent repealed, and that thereafter boards of county commissioners could not act under the former law, but that any legal action already taken would stand and govern the question of compensation until such time as the legislature acted under the provision of the constitution, and, the board having already fixed the salary at $800 per annum, he is entitled to receive that sum. The decisions are not entirely uniform, but, under the decided preponderance of authority as well as upon principle, we are of opinion that appellant's contention cannot be sustained. Legislative power is plenary. Our constitutional provision under discussion is, as we have said, a limitation upon that power. A constitutional limitation from its very nature is, and must be, prospective, and not retroactive. It does not render unlawful

that which had theretofore been lawfully done, and whether or not it repeals a former valid statute that could not be subsequently enacted, where such repeal results by implication, depends largely upon whether or not it furnishes any instrumentality to replace the former law. If it simply provides for subsequent legislation which shall, when enacted, furnish the instrumentality to replace the former law, then such preceding law is not repealed until the subsequent legislation is enacted. In *State v. Swan*, 1 N. D. 5, 44 N. W. 492, we held that the prohibition article in our constitution which prohibited the sale of intoxicating liquors within the state, but fixed no provisions or penalties by which the prohibition could be enforced, and declared that "the legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article, and shall thereby provide suitable penalties for the violation thereof," did not of itself repeal the pre-existing license law, and that a party who sold intoxicating liquor in the state without a license, after the adoption of the constitution, but before the legislature had taken any. action as required by the prohibition article, might be punished under the pre-existing license law. That holding necessarily covered the proposition that during such interval a license to sell intoxicating liquor might be issued under the former law. We held that the existing law was not repealed by the adoption of the prohibition article, and not being repealed, it remained in force for all purposes. The principles there announced and the authorities cited fully cover this case. In *Cutting* v. *Taylor*, (S. D.) 51 N. W. 949, the learned court uses this language: "All legislation under the constitution must be tested by its provision, but a law valid when passed, and regularly enacted as there required, is not necessarily abrogated or repealed by a subsequent constitutional provision requiring the pursuance of other or different methods or forms of legislation than those which were adequate when such law was passed, as that would be to make such constitutional requirement retroactive." *People* v. *County Com'rs of Grand Co.*, 6 Colo. 202, was a case where, upon the

point under discussion, the court, upon a rehearing, reversed its former decision, and in the opinion the following language is used: "The law of the case is in favor of the constitutionality of the statute. Similar provisions had, long prior to the adoption of our constitution, existed in the constitutions of many of the states, and had been construed as wholly prospective, and as only intended to affect future legislation. At first this doctrine met with opposition, as being unsound in principle, and it was announced by divided courts, but later it received a unanimity of opinion, which gave to it the force of a settled rule of construction. It was held that they were not intended to annul or affect existing laws of the character prohibited. The clause continuing in force laws not inconsistent with the constitution was held not to abrogate laws which, if subsequently enacted, would be clearly inconsistent and unconstitutional." See, also, *People* v. *District Court of Pilkin Co.*, 11 Colo. 147, 17 Pac. 298; *Williams* v. *Mayor, etc.*, 2 Mich. 560; *Goldman* v. *Clark*, 1 Nev. 610; *Lehigh Iron Co.* v. *Upper Macumgie Tp.*, 81 Pa. St. 482; *Indiana Co.* v. *Agricultural Soc.*, 85 Pa. St. 357; *People* v. *Bradley*, 60 Ill. 390; *State* v. *Trustees of Union Tp.*, 8 Ohio St. 394; *Allbyer* v. *State*, 10 Ohio St. 589; *State* v. *Barbee*, 3 Ind. 258; *State* v. *Macon County Court*, 41 Mo. 453. We hold that our constitutional provision which required the legislature to prescribe the compensation of state's attorneys did not in itself repeal the pre-existing law which gave that authority to boards of county commissioners, and that such boards may continue to exercise such power until the legislature by law fixes such compensation. It is true that in the resolution adopted by the board of commissioners of the respondent county in July, 1892, wherein they fixed the salary of state's attorney at $500 per annum, the board bases its right so to do upon Ch. 55, Laws 1890, but the fact that they mistook the source of their authority will not affect their action so long as their authority in fact existed.

The judgment of the District Court is affirmed. All concur.