[File No. 6378.]

J. O. FYLKEN, Ed Ehr, Petra Peterson, Minot Recreation Parlors, a Corporation, John Syversen and Lewis J. Stewart, Co-partners as Syversen & Stewart, Appellants, v. CITY OF MINOT, a Municipal Corporation, Respondent.

(264 N. W. 728, 103 A.L.R. 320.)

Opinion filed January 20, 1936.

*O. B. Herigstad,* for appellant.

*John J. Coyle,* and *Sullivan, Fleck & Sullivan,* for respondents.
*Matthew W. Murphy,* as amicus curiæ.

NUESSLE, J. This action was brought to enjoin the defendant the city of Minot from enforcing certain provisions of its ordinance regulating the sale of beer. The case was tried to the court without a jury. Judgment was ordered and entered against the defendant, which thereupon perfected this appeal.

The pertinent facts herein may be stated as follows: Section 8 of the Initiated Measure authorizing the manufacture, sale, and distribution of beer, approved September 22, 1933, see page 495, et seq., Sess. Laws 1935, as amended by chapter 97, § 3, Sess. Laws 1935, provides:

"There is hereby conferred upon the governing bodies of each incorporated city and village the authority to require licenses from retailers of beer in such village or city, and to license, and to deny and revoke licenses for cause, and to regulate the business of vendors at retail of beer authorized to be sold by this act, in their respective jurisdictions, subject to review by the courts of the state, to impose and collect a license fee therefor, and to provide for the punishment of any violation of any such regulations, according to the provisions of law, excepting that such regulations shall be uniform, and that all applicants for license, who are qualified under § 2 of this act, shall be granted licenses by said municipalities.

"There is hereby conferred upon the board of county commissioners of each county the same powers and authority as are herein granted to the governing boards of incorporated cities and villages, relative to the retailing of beer in all territory outside of incorporated cities and villages. . . ."

Pursuant to the provisions of this section of the Initiated Measure, the defendant city of Minot in October, 1933, enacted an ordinance providing for four classes of beer licenses, to wit: Class A, licensing the holders thereof to sell beer at retail for consumption, either on or off the premises where sold, and fixing the annual license charge therefor at $200; class C, licensing the holders thereof to sell bottled beer at retail to be consumed on the premises where sold, and fixing the license charge at $25; class D, licensing the holders there-

254.

of to sell bottled beer at retail, to be consumed on or off the premises where sold, and fixing the license charge at $100. The record is silent as to class B licenses. The ordinance further prohibits the sale of beer on Sundays after two a. m. Pursuant to the provisions of this ordinance, during the year beginning July 1, 1934, 42 class A licenses, 2 class C licenses, and 3 class D licenses were issued. The license fees therefor aggregated $8,750. The number of applicants for licenses for the year beginning July 1, 1935, is about the same as the number of those who applied for licenses for the year beginning July 1, 1934. During the year beginning July 1, 1934, the cost of operating the police department of the city of Minot was about $1100 greater than for the year immediately prior to the taking effect of the ordinance in question. During the same period the aggregate cost of operating all departments of the city government was materially decreased. The record discloses that subsequent to the time when the ordinance went into effect and licenses for the sale of beer were issued, greater police supervision was required and the police force was increased by the addition of two policemen; that there was a greater number of people on the streets between the hours of ten p. m. and two a. m. than before the ordinance went into effect, and that there were more intoxicated people on the streets than before the ordinance became effective; that the higher the license fee is, the better the class of men is who go into the beer business; that if beer license charges be reduced appreciably the number engaged in the selling of beer has a tendency to increase; that as the number of places where beer is sold increases, the difficulty and expense of supervision increases.

The plaintiffs are the holders of class A licenses. They challenge the ordinance in question on the ground that the license fee prescribed is exorbitant and unreasonable and that the ordinance in effect is a revenue measure rather than a regulatory measure; that under the terms of the initiated measure, the sale of beer is no longer prescribed and that the city authorities have no right to prohibit the same on Sundays.

The foundation on which the plaintiffs ground their position is that beer permitted to be sold under the initiated measure, supra, is not intoxicating, and therefore the business of selling beer must be regarded and treated the same as any other useful and harmless business or oc-

cupation, so any license fee imposed must not appreciably exceed in amount the cost of reasonably regulating the business. That in fact the license charges imposed by the ordinance in question are so disproportionate to the regulatory costs that the license provision is in effect a revenue measure beyond the power of the city to enact; that under the general statutes of the state beer may be sold on Sunday.

On the other hand, the defendant city of Minot insists that the license provision of the ordinance is not a revenue measure; that under the provisions of the initiated measure, supra, the city is empowered to regulate and license the selling of beer; that the license fee imposed is not so greatly disproportionate to the cost of such regulation as to invalidate the measure; that, in any event, the business of selling beer is one that concerns the public morals and the public welfare and that the city has the right to restrict the number and determine the character of those engaged in the business by the imposition of license charges greater than the actual cost of mere supervision and regulation; that if as an incident revenue results, the ordinance is not thereby invalidated; that as a matter of regulation the city has the right to wholly prohibit the sale of beer on Sunday.

By Article 20 of the Constitution of North Dakota, adopted when the state was admitted to the Union in 1889, the manufacture and sale of intoxicating liquor was proscribed and the legislature was directed to enact legislation putting the article into effect. See State ex rel. Ohlquist v. Swan, 1 N. D. 5, 44 N. W. 492. Pursuant to this direction a prohibitory law was enacted. See chapter 110, Sess. Laws 1889–1890. This law with accretions through revision and amendment is still in effect as chapters 83, 84, 86, 87, 88 and 89 of the Penal Code, Comp. Laws 1913, and amendments thereto, except as abrogated by the initiated measure, supra, as amended, providing for the manufacture, sale, and distribution of beer. The constitutional prohibition provision, Article 20, supra, was repealed by amendment in 1932 (see page 492, Sess. Laws 1933). This repeal did not affect the statutory provisions touching the sale of intoxicating liquor. See State v. Ligaarden, 59 N. D. 475, 230 N. W. 729, 70 A.L.R. 126; Re Aipperspach, 63 N. D. 358, 248 N. W. 488; State v. Norton, 64 N. D. 675, 255 N. W. 787. And an attempt by initiative to wholly repeal the statutory prohibition

enactments was defeated. See page 501, Sess. Laws 1935. Accordingly, as the law now stands, though beer may be sold pursuant to the provisions of the initiated measure, supra, as amended, nevertheless it is an intoxicating liquor. See § 10105, Supplement; State v. Fargo Bottling Works Co. 19 N. D. 396, 124 N. W. 387, 26 L.R.A.(N.S.) 872. The initiated measure merely substitutes regulation and control of the business of selling beer for its absolute prohibition, and there is nothing contained in it that indicates any intention on the part of the people of the state of North Dakota to depart from the theory that the liquor traffic is evil in itself. On the contrary, the measure fairly bristles with affirmative evidence that no such purpose motivated its adoption. So far as the state is concerned, the measure is both a tax measure and a regulatory measure. So far as the local subdivisions are concerned, it is purely a regulatory measure. Its character as a tax measure is clearly disclosed by section 6 thereof which, in so many words, provides for the levy and collection of a tax by the state. Nearly every other section of the measure acclaims that while beer may be manufactured and sold in the state, the business is so intimately associated with the proscribed liquor traffic that it must be strictly supervised, regulated and controlled. On no other theory can its provisions be justified and sustained. As, for instance, section 2 prescribes that vendors of beer at retail must be citizens and residents of the state and "engaged in any legitimate and lawful business." Section 3 provides for a state beer commissioner, charged with the enforcement of the provisions of the act so far as the state is concerned, who shall refuse a state license to any one applying therefor unless such applicant is shown to be a reputable person of good moral character. Section 7 provides that breweries may be established within the state and provides for a license therefor, which "Said license shall also entitle said brewery to sell its manufactured product to duly licensed wholesale dealers or jobbers regularly engaged in legitimate business as in this act defined. Provided however that no brewer, domestic or foreign, operating within or without the state, shall be licensed to operate or conduct, directly or indirectly, either in the name of the brewery or as a subsidiary or through any of its officers, agents or employees, branch or distributing office, as a wholesale dealer in this state. Provided further that no brewery operating within or

without the state shall be licensed to engage in the retail sale of beer within the state." Section 8, hereinbefore quoted, places a major portion of the responsibility for the control and regulation of the traffic in local boards, gives such boards the power to regulate and license and impose penalties for violations of the ordinance thus enacted. Section 9 provides that "No retailer or wholesaler of beer, or any brewery established within this state, shall be permitted under the provisions of this act to sell beer to a minor, incompetent person, Indian as defined by Federal Law, or a person who is an inebriate or habitual drunkard." Section 11 provides for the licensing of wholesalers and distributors authorized to distribute beer "by wholesale," limits those who may engage in such business to those "regularly engaged in legitimate wholesale business within the state," and further provides that "No distributor, licensed to do business in this state shall ever be licensed to retail the sale of beer within the state, in quantities less than a case. No applicant for wholesaler's or distributor's license shall be eligible therefor, unless the applicant has established both a warehouse for handling the beer under such license and a bona fide office in which is kept a complete set of records, correspondence and files relative to all beer transactions, within the State of North Dakota." Section 15 declares "The object sought by this enactment is to provide for the sale and regulation of beer in the State of North Dakota. . . ." Section 16 forbids any person to manufacture or sell beer within the state without first obtaining the requisite license to do so. And finally, § 17 characterizes any violation of the measure as a misdemeanor and severely penalizes it.

On oral argument, counsel for the plaintiffs strenuously urged that the beer permitted to be sold under the provisions of the initiated measure is in fact non-intoxicating. What the fact in that regard may be—and its non-intoxicating character is not conceded—is wholly immaterial in this litigation. It is sufficient to say that the law-making body has seen fit to declare that beer is intoxicating. See § 10105, supra; State v. Fargo Bottling Works Company, supra. See also in this connection, Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 57 L. ed. 184, 33 S. Ct. 44. This being so, the foundation is cut out from under the position on which the plaintiffs bottom this proceeding.

It is true the rule is, as contended by the plaintiffs, that a purely regulatory exaction imposed on a legitimate and useful business or occupation, cannot be sustained if it result in a return unreasonably disproportionate to the cost of regulation. See Goer v. Taylor, 51 N. D. 792, 200 N. W. 898, and cases cited. But this rule does not apply where the license charge is imposed on those occupations which, while they are tolerated, are recognized as being hurtful to public morals, productive of disorder, or injurious to the public. State v. Wilson, 101 Kan. 789, 168 P. 679, L.R.A.1918B, 374; 37 C. J. 190 et seq., and authorities cited. As we have shown above, the business of selling beer has been and is considered and treated by the law-making body as such a business. Where the legislature sets out to regulate a business of this character, the amount of the license charge in the absence of constitutional restriction rests in its discretion. 33 C. J. 568. A municipal corporation is an agency of the state. Lang v. Cavalier, 59 N. D. 75, 228 N. W. 819. The legislature may delegate to a municipality, as such an agency, the authority to exercise such regulatory power as it itself might exercise. Schmidt v. Indianapolis, 168 Ind. 631, 80 N. E. 632, 14 L.R.A.(N.S.) 787, 120 Am. St. Rep. 385; Black, Intoxicating Liquors, §§ 217 et seq. See, also, note, 114 Am. St. Rep., page 299. And where the power to regulate and in regulating to impose license charges is expressly delegated (as in the instant case) and there is no restriction on that power, the action of the municipality in fixing the license charge will be disturbed only in case of manifest abuse of its power in that behalf. Schmidt v. Indianapolis, supra; 33 C. J. 568. Questions of expediency and reasonableness in such cases are to be determined by the municipal authorities under the power expressly delegated to them by the legislature. Such questions are legislative and not judicial. The rule in this regard is stated by Judge Dillon, as follows: "Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the Constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the leg-

islature distinctly says may be done cannot be set aside by the courts because they deem it to be unreasonable or against sound policy." Dill. Mun. Corp. 5th ed. § 600. See also McQuillin Mun. Corp. 2d ed. §§ 760 et seq. So the license charge imposed may be such as to place a reasonable restriction upon the number of those engaging in the business and determine their character and responsibility, and is not limited to the amount that will reasonably cover the cost of regulation. Elk Point v. Vaughn, 1 Dak. 113, 46 N. W. 577; Schmidt v. Indianapolis, 168 Ind. 631, 80 N. E. 632, 14 L.R.A.(N.S.) 787, 120 Am. St. Rep. 385, supra; 33 C. J. 569; 17 R. C. L. 543. But the amount of the charge thus imposed may be material in determining whether the ordinance is intended for regulation only or is so exorbitant as to be virtually prohibitive and therefore not within the scope of the power delegated to the municipality by the legislature. Presumptively, such an ordinance is valid and the burden is upon him who challenges it to establish its invalidity. Bismarck v. Hughes, 53 N. D. 838, 208 N. W. 711; McQuillin, Mun. Corp. 2d ed. § 768. And where the charge is so great as to be beyond the power of the municipality to impose, though a court may, in such case, declare the ordinance void, it cannot substitute its judgment for that of the municipal authorities and fix a smaller charge which may be regarded as reasonable. See Postal-Teleg.-Cable Co. v. New Hope, 192 U. S. 55, 48 L. ed. 338, 24 S. Ct. 204. Viewed in the light of the foregoing rules, we are of the opinion that the license charges imposed by the ordinance in question cannot be said to be so unreasonable as to render the ordinance fixing it void.

But the plaintiffs insist that the initiated measure, as amended, which delegates to municipal authorities the power to regulate the sale of beer and to fix and collect license charges therefor, provides that the action of such authorities in that behalf is subject to review by the courts, and that accordingly the reasonableness of the license charges imposed by the ordinance here in question is subject to judicial review. With this we cannot agree. Even though that clause in the measure providing for a review by the courts be as broad as plaintiffs contend, it cannot have the effect for which they contend. The provision in question is interpolated in the midst of the first paragraph of Section 8. Giving the words of the whole paragraph their ordinary meaning, this.

provision can apply only to those portions thereof which precede it. By no reasonable construction can it be said that the clause empowering municipal authorities "to impose and collect" a license fee is at all affected by the clause providing for a review. The position in the paragraph of this latter clause weighs against rather than in favor of the plaintiffs' contention.

The plaintiffs further contend that the ordinance here challenged is invalid for the reason that it prohibits the sale of beer on Sundays after two o'clock a. m. In this behalf they rely upon the rule that in the exercise of authority delegated by the legislature a municipality cannot enact an ordinance contrary to the provisions of general statutory enactments. See Power v. Nordstrom, 150 Minn. 228, 184 N. W. 967, 18 A.L.R. 733. They urge that under the general statute, § 9240, Supplement, non-intoxicating beverages and foods may be sold on Sunday, and accordingly the provision of the ordinance prohibiting the sale of beer on Sundays after two o'clock a. m. is ultra vires. But this contention also is predicated wholly upon the proposition that beer is non-intoxicating. As we have shown above this is not so. And since by legislative fiat beer is intoxicating, it cannot come within the provisions of the statute, section 9240, supra, and the ordinance is not subject to the challenge thus interposed. The ordinance is enacted in the exercise of the police power. And there can be no question but that the prohibition of the sale of intoxicating liquors on the first day of the week is a proper exercise of that power. See Black, Intoxicating Liquors, § 235.

In view of what we have said above the judgment must be reversed and the action dismissed. It is so ordered.

BURKE, Ch. J., and MORRIS, CHRISTIANSON and BURR, JJ., concur.