**STATE ex rel. Thomas John AGNEW, Petitioner,**

v.

**Dennis A. SCHNEIDER, Judge of the County Court with increased jurisdiction, Burleigh County, North Dakota, Respondent.**

**Civ. No. 9332.**

Supreme Court of North Dakota.

April 28, 1977.

Fred E. Saefke, Jr., Bismarck, for petitioner.

Robert P. Brady, Asst. Atty. Gen., and John M. Olson, Burleigh County State's Atty., Bismarck, for respondent.

SAND, Justice.

This is an original proceeding wherein Agnew petitioned this court to exercise its original jurisdiction and issue a writ of prohibition commanding the county court with increased jurisdiction, Burleigh County, to desist from any further proceedings in the case of *State v. Agnew*. The petitioner, Agnew, contended that unless a writ of prohibition is issued the county court with increased jurisdiction will proceed to hear and determine his innocence or guilt even though such court has no existence and has no jurisdiction as a result of the adoption of the Judicial Article (Chapter 615 of the 1975 North Dakota Session Laws) which was approved by the electorate on September 7, 1976, and became effective thirty days thereafter.

Agnew requested the Attorney General to bring this action on behalf of the people of the State, but without success. He then filed this petition.

Agnew was arrested by the sheriff's department of Burleigh County, North Dakota, on 1 January 1977 and was cited to appear before the Honorable Dennis A. Schneider, Judge of the county court with increased jurisdiction of Burleigh County, North Dakota, to answer to the charge of operating a motor vehicle upon a public highway while under the influence of intoxicating liquor.

For brevity and for better understanding, we refer to the former constitutional provision as the "old judicial Article" and the recently adopted one (Chapter 615, 1975 N.D.S.L.) as the "new judicial Article."

It will be helpful to briefly examine the constitutional provision involved in this case.

Section 85 of the old judicial Article of the North Dakota Constitution provided as follows:

"The judicial power of the state of North Dakota shall be vested in a supreme court, district courts, county courts, justices of the peace, and in such other courts as may be created by law for cities, incorporated towns and villages."

Section 110 of the old Article stated:

"There shall be established in each county a county court, which shall be a court of record open at all times and holden by one judge, elected by the electors of the county, and whose term of office shall be two years."

Section 111 of the old Article set forth the jurisdiction of the county court and also

provided the manner by which a county court may be given increased jurisdiction.

In the new judicial Article, Section 85 provides as follows:

"The judicial power of the state is vested in a unified judicial system consisting of a supreme court, a district court, and such other courts as may be provided by law."

Nowhere in the new judicial Article is there a provision in substance stating that a county court shall be created, as did the old judicial Article.

In accordance with the old judicial Article of the North Dakota Constitution numerous statutory provisions, including Chapters 27–07 and 27–08, North Dakota Century Code, were enacted by the Legislature to implement the constitutional requirements.

Agnew contends that upon the effective date of the new judicial Article vesting the judicial powers of the State of North Dakota in a unified judicial system consisting of a supreme court, a district court, and such other courts as may be provided by law, and repealing the old judicial Article IV, including Sections 85, 110 and 111, the statutory provisions (Chapters 27–07 and 27–08, NDCC) which created the county court enacted pursuant to the former Constitution were repealed. As a consequence thereof, he claims that the county courts no longer exist after the effective date of the new judicial Article.

Neither the title nor the body of the new judicial Article (Chapter 615, N.D.S.L.) make any mention of repealing any statutory provisions. Therefore, any repeal would have to be by implication based on the provisions of the new judicial Article.

■■ Counsel for Agnew argued strenuously that the phrase "as may be provided by law" operates only prospectively, and as a result prior legislation enacted under the old judicial Article is no longer effective and that the Legislature would have to reenact laws under the new Constitution to give life to the county courts and courts other than the supreme and district courts. This argument presupposes that the new judicial Article is self-executing and, in addition, it does not recognize that the North Dakota Legislature has plenary powers, except as limited by the State Constitution, the United States Constitution, and Congressional Acts in matters in which the federal government is supreme. *Verry v. Trenbeath*, 148 N.W.2d 567 (N.D.1967); *Baird v. Burke County*, 53 N.D. 140, 205 N.W. 17 (1925). The argument erroneously assumes that the North Dakota Constitution is an instrument of grants, as in the United States Constitution, rather than one of limitations. This difference between the two types of Constitutions is significant.

■ The phrase "as provided by law" in conjunction with its variable auxiliary verbs, takes on full and true meaning from the context in which it is found. We are satisfied that this phrase fundamentally means that the subject matter [1] which this phrase modifies is not "locked" into the Constitution but may be dealt with by the Legislature as it deems appropriate.

The phrase "as provided by law," and phrases of similar meaning, are found in different sections of the new Constitution, all in a slightly different context, as follows:

Section 85: "and such other courts as may be provided by law";

Section 86: "in the manner provided by law";

Section 87: "and unless otherwise provided by law";

Section 90: "as may be provided by law";

Section 91: "as provided by law";

Section 92: "except as otherwise provided by law" and "as may be provided by law";

Section 93: "as provided by law" and "shall be fixed by law";

Section 94: "as may be prescribed by law";

---

1. As an illustration of a subject matter, the phrase in Section 85 of the new Constitution "and such other courts as may be provided by law," and other similar phrases, would be included in the term "subject matter" as used here.

Section 96: "The legislative assembly may provide for"; and

Section 97: "shall be established by law."

The manner in which the phrases are used throughout the new judicial Article clearly shows that neither it nor Section 85 thereof is self-executing.

As pointed out by case law later herein, we do not believe that the resolution of the ultimate issue under consideration here depends upon the determination whether or not the phrase "as provided by law" or "as may be provided by law" only operates prospectively. In many instances, wherever used with "may be" or "shall," etc., it means prospectively, but that is not dispositive of the question before us.

If the State Constitution were an instrument of grants such as the United States Constitution, the phrase "as may be provided by law" would be entitled to greater consideration, if not controlling. Such phrase, which usually operates prospectively only, would empower the legislature to act, but only after adoption of the constitutional provision containing the phrase, but this is not the situation. The legislature under the North Dakota Constitution has plenary powers except as limited by the North Dakota Constitution, the United States Constitution, and Congressional Acts. *See, State v. Houge*, 67 N.D. 251, 271 N.W. 677 (1937). Therefore a different concept applies.

■ Repugnancy, inconsistency, and conflict between State statutes and self-executing State constitutional provisions have been the basic factors in determining whether or not such statutes are repealed by implication with the adoption of a self-executing State constitutional provision. The respect and need for orderly process in the transition from Territory to State gave rise to the formalization of this concept. We also believe that this is why a somewhat similar concept was incorporated in the mechanics for the transition and was made part of the original State constitution.

■ The omnibus bill (Chapter 180, 25 Stat. 676, 1889), also known as the Enabling Act (by which North Dakota became a State), Section 24, in part, provided as follows:

". . . all laws in force made by said territories, at the time of their admission into the union, shall be in force in said states, except as modified or changed by this act, or by the constitutions of the states, respectively."

Section 2 of the Schedule of the original Constitution of North Dakota provided as follows:

"All laws now in force in the territory of Dakota, which are not repugnant to this constitution, shall remain in force until they expire by their own limitations or be altered or repealed."

The term "altered or repealed" obviously had reference to legislative action.

Before reviewing case law, we should note that the new judicial Article does not provide for a judicial system consisting only of a supreme court and a district court, *and none other*, but rather provides *"and such other courts as may be provided by law."*

In *State ex rel. Ohlquist v. Swan*, 1 N.D. 5, 44 N.W. 492 (1890), Ohlquist was charged with violating Chapter 26 of the 1879 Territorial Session Laws. This law provided as follows:

"It shall be unlawful for any person, by himself, by agent, or otherwise, to sell, in any quantities, intoxicating liquors to be drank in, upon, or about the premises where sold, or to sell such intoxicating liquors to be drank in any adjoining room, building, or premises, or other place of popular resort connected with such premises where sold, or to sell such intoxicating liquors, for any purpose, in any quantities less than five gallons, without first having obtained a license and given a bond as hereinafter provided: provided, that intoxicating liquors shall not be sold in any quantity, where no license is granted by the board of county commissioners, except as provided for in section 13. . . ."

The sale by Ohlquist took place on January 10, 1890.

In 1889, North Dakota adopted its Constitution, of which Article XX was a part thereof and provided as follows:

"No person, association or corporation shall within this state, manufacture for sale or gift, any intoxicating liquors, and no person, association or corporation shall import any of the same for sale or gift, or keep or sell or offer the same for sale, or gift, barter or trade as a beverage. *The legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article, and shall thereby provide suitable penalties for the violation thereof.*" [Emphasis added.]

Ohlquist contended that Chapter 26 of the 1879 Territorial Session Laws, as amended, is repugnant to Article XX of the Constitution, and that Chapter 26 is no longer in force, or at least that said Chapter is changed and modified by Article XX insofar as it provides for the issuance of license, and hence cannot stand under the provisions of the omnibus bill as a licensing statute. Ohlquist argued that upon the adoption of Article XX of the Constitution there was no law in North Dakota by which the open and notorious sale of intoxicating liquor for any purposes in any quantity can be punished. The court observed:

"It follows, then, on relator's [Ohlquist's] theory, that the constitutional convention, which sought to give the state absolute prohibition, in fact gave it untrammeled liquor traffic, and provided that such untrammeled traffic should continue indefinitely, unless some legislature, to be elected in the future, should voluntarily elect to check the flood of intoxicants that the constitution turned loose upon the state. Such a conclusion is so at variance with all past legislation on the subject, so at variance with the declared wish of the voters of the state, so at variance with the intent and expectation of the framers of our constitution, that this court ought not to reach it, unless forced thereto by the clear rules of construction . . . ."

The court observed that this question inevitably involves the proposition whether or not Article XX of the Constitution automatically repealed Chapter 26 of the 1879 Laws, which in turn depended upon whether or not Article XX was self-executing. And this in turn depended upon whether or not the legal machinery existed for its enforcement. The court ultimately said that Chapter 26. fails if Article XX was self-executing. It concluded that Article XX was not self-executing in that no common law or statutory provision existed for its enforcement, hence it remained dormant as a restriction upon the citizens until given life by subsequent legislation, and as such it had no force as a repealing measure, and Chapter 26 of the 1879 Laws stood in its entirety.

The court mentioned, but did not rest its decision on, the omnibus bill, Section 24, by which North Dakota became a State, and Section 2 of the North Dakota Schedule of the Constitution which contained the provision that all laws now in force which are not repugnant to this Constitution shall remain in force until they expire by their own limitation or be altered or repealed.

In *Roesler et al. v. Taylor*, 3 N.D. 546, 58 N.W. 342 (1894), the court had under consideration whether or not §§ 5126 to 5140 of the Territorial Compiled Laws, which allowed a partnership to claim one exemption of $1,500 out of the partnership property, was repealed by the adoption of § 208 of the North Dakota Constitution which provided as follows:

"The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by the wholesome laws, exempting from forced sale to all heads of families the homestead, the value of which shall be limited and defined by law, and a reasonable amount of personal property; the kind and value shall be fixed by law. This section shall not be construed to prevent liens against the homestead for labor done and material furnished in the improvement thereof, in such manner as may be prescribed by law."

Section 2 of the Schedule of the Constitution continued in force all existing laws of

the Territory not repugnant to the provisions of the Constitution.

The court said:

"It is enough to know that the legislature, acting under the constitution, has not attempted to do so; and the constitutional provision itself is powerless to repeal the pre-existing laws, because it is without force or effect until supplemented by the legislative action, which it, in terms, requires."

The court held that the prior law was not repealed and the exemption was still applicable even though a new constitutional provision had been adopted.

In *State v. Blanding*, 264 S.C. 37, 212 S.E.2d 256 (1975), the dispute involved the assumed jurisdiction of the family court over a murder charge brought against a thirteen year old child. Prior to a constitutional amendment the circuit court was vested with the exclusive jurisdiction to try murder cases regardless of the defendant's age. Under the new amendment to the Constitution, the circuit court was not granted exclusive jurisdiction for any offenses and the legislature could provide the family court with jurisdiction to try such cases. The supreme court held that the general assembly had not yet ceded jurisdiction to the family court and, therefore, it did not have jurisdiction. However, in this case there was a statute providing that all courts in existence on the effective date of the ratification of Article V of the Constitution should continue in existence with all the powers and duties vested in them prior to such ratification until such time as a certain schedule provided for in Article V had been implemented. The court held that the schedule had not yet been implemented and, until it was, the circuit court continued to possess exclusive jurisdiction.

In the following cases neither the omnibus bill nor Section 2 of the Schedule of the Constitution was involved.

In *Ex parte Aipperspach*, 63 N.D. 358, 248 N.W. 488 (1933), Aipperspach was arrested and charged with violating the State prohibition laws on April 10, 1933. He claimed he was unlawfully detained and was enti-

tled to a writ of habeas corpus on the ground that the people of North Dakota at the general election on November 8, 1932, repealed the constitutional provision commanding the legislature to prohibit sale of alcohol and by so repealing the constitutional provision the statutory provisions were automatically repealed.

The court did not agree. The court said:

"In short, the question whether such law should or should not be repealed is a matter not imbedded in the Constitution, but resting in legislative judgment and discretion, and the repeal of the constitutional mandate would in no manner effect a repeal of the statutes which the lawmakers had adopted, any more than the repeal of such statutes would have operated to strike out the constitutional mandate."

The court also said:

"If it be assumed that at the last general election the proposed constitutional amendment, instead of merely providing for a repeal of section 217 [Article XX], had further provided that the sale of intoxicating liquors shall be permitted in this state under such regulations as the legislature may prescribe, it follows from the rule announced by this court in *State [ex rel. Ohlquist] v. Swan*, [1 N.D. 5, 44 N.W. 492] supra, that the adoption of such constitutional amendment would not have operated to repeal the state prohibitory law, but these would have remained in full force and effect until new statutes were enacted by the Legislature."

In *State v. Houge*, 67 N.D. 251, 271 N.W. 677 (1937), the court considered the question whether or not a statute was repealed as a result of an amendment to the Constitution. The manufacture and sale of intoxicating liquors for beverage purposes was forbidden by the Constitution (N.D.Const. § 217) and appropriate legislation was enacted implementing the constitutional mandate. The constitutional provision was repealed by constitutional amendment adopted at the general election in 1932 (Article 47, Amendments North Dakota Constitution,

see 1933 Session Laws, page 492), but the repeal did not abrogate or repeal the then existing statutes prohibiting the importation, manufacture, sale, or possession of intoxicating liquor for beverage purposes. *See, In re Aipperspach*, 63 N.D. 358, 248 N.W. 488; *State v. Norton*, 64 N.D. 675, 255 N.W. 787. See also, *State v. Ligaarden*, 59 N.D. 475, 230 N.W. 729, 70 A.L.R. 126; *Fylken et al. v. City of Minot*, 66 N.D. 251, 264 N.W. 728, 103 A.L.R. 320.

In *Houge, supra*, 271 N.W. at page 681, the court stated:

"The holding of the Supreme Court of the United States in *United States v. Chambers*, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510, is not applicable to the facts here. The power of Congress to enact a national prohibition act rested upon a grant of such power contained in the Eighteenth Amendment. When the Eighteenth Amendment was repealed, the congressional power to enact such legislation vanished."

The court also recognized the net distinction between the United States Constitution and Congress, and the State Constitution and the North Dakota Legislature, by stating:

"That is not the situation in this state. The legislative power to make it an offense to engage in the liquor traffic did not spring from power granted in the Constitution. The Legislature had plenary power to enact such legislation, and the legislative enactments making it a public offense to engage in the liquor traffic remained in full force and effect notwithstanding the repeal of the prohibitory provisions in the State Constitution."

The fact that the court reached this conclusion in a criminal case is all the more persuasive.

In *Doherty v. Ransom County*, 5 N.D. 1, 63 N.W. 148 (1895), the court had under consideration the question whether or not a constitutional provision was self-executing so as to repeal a prior enacted law which probably would have been invalid if enacted after the adoption of the new Constitution.

Prior to the time that North Dakota became a State, Section 431, Compiled Laws, authorized the county commissioners to fix the salary of the district attorney, and pursuant to such law the commissioners fixed the salary at $800 per annum. Subsequently thereto, Section 173 of the State Constitution was adopted, which contained the following provision:

"The legislative assembly shall provide by law for such other county, township and district officers as may be deemed necessary, and shall prescribe the duties and compensation of all county, township and district officers."

Thereafter, the Legislative Assembly passed an Act, known as Chapter 55 of the 1890 Session Laws, which provides, amongst other things, that the board of county commissioners shall fix the amount of salary which shall be received by every county officer for the ensuing year. It also provided that this section shall not apply to any county wherein the salaries of its officers have been provided and fixed by law. Under this statute the board of county commissioners fixed the salary of the state's attorney at $500 per annum.

The court held that Chapter 55, 1890 Session Laws, was invalid in that it delegated authority to the board of county commissioners in contravention of Section 173 of the North Dakota Constitution. However, the court also held that the law passed prior to the adoption of the Constitution, Section 431, Compiled Laws, remained operative until the Legislature, pursuant to Section 73 of the Constitution, set the salary for the state's attorneys. It is interesting to note that the court reached the conclusion on Chapter 431, Compiled Laws, in face of Section 2 of the Schedule to the North Dakota Constitution, quoted supra. The court specifically noted that:

"Legislature power is plenary. Our constitutional provision under discussion is, as we have said, a limitation upon that power. A constitutional limitation from its very nature is, and must be, prospective, and not retroactive. It does not render unlawful that which had thereto-

fore been lawfully done, and whether or not it repeals a former valid statute that could not be subsequently enacted, where such repeal results by implication, depends largely upon whether or not it furnishes any instrumentality to replace the former law. If it simply provides for subsequent legislation which shall, when enacted, furnish the instrumentality to replace the former law, then such preceding law is not repealed until the subsequent legislation is enacted."

The court, in *Doherty*, then quoted approvingly from *Cutting v. Taylor*, 3 S.D. 11, 51 N.W. 949, as follows:

"All legislation under the constitution must be tested by its provision, but a law valid when passed, and regularly enacted as there required, is not necessarily abrogated or repealed by a subsequent constitutional provision requiring the pursuance of other or different methods or forms of legislation than those which were adequate when such law was passed, as that would be to make such constitutional requirement retroactive."

This case illustrates the effect of a constitutional provision which is not self-executing.

The next few cases illustrate what is necessary to make a constitutional provision self-executing, and one of the effects if it is not.

*State ex rel. Linde v. Hall*, 35 N.D. 34, 159 N.W. 281 (1916), had under consideration the question whether or not Article XV, Section 202, subsection (2) of the 1914 amendment, authorizing the initiative and referendum to amend the Constitution was self-executing. The court held it was not because some things remained to be performed as the Legislature may provide, and in addition there was a question as to what constituted twenty-five percent of the legal voters in each of not less than one-half of the counties of the State. A constitutional provision did not contain all of the necessary prerequisites so as to make it self-executing but its implementation required legislation, and without legislation it was uncertain exactly how to proceed, and, there-

fore, the court held that it was not self-executing. It was a mandate to succeeding legislatures to provide laws for amending the Constitution by the initiative and referendum.

In *In re Advisory Opinion to the Governor*, 132 So.2d 163 (Fla.1961), the court had under consideration the question whether or not a statute which was adopted prior to the amendment of the constitutional provision as to the department of judges was still available and applicable to the Constitution as amended. In a per curiam opinion, the court said:

"In considering the effect of constitutional amendments upon existing statutes, the rule is that the statute will continue in effect until it is completely inconsistent with the plain terms of the Constitution. However, when a constitutional provision is not self-executing, as is the case here, all existing statutes which are consistent with the amended Constitution will remain in effect until repealed by the Legislature. Implied repeals of statutes by later constitutional provisions is not favored and the courts require that in order to produce a repeal by implication the repugnancy between the statute and the Constitution must be obvious or necessary. Pursuant to this rule, if by any fair course of reasoning the statute can be harmonized or reconciled with the new constitutional provision, then it is the duty of the courts to do so. 50 Am. Jur., Statutes, Section 540–541, pages 546–548; Opinion of Justices, 251 Ala. 96, 36 So.2d 480; *Porter v. First National Bank*, 96 Fla. 740, 119 So. 130, Rehearing Denied, 96 Fla. 740, 119 So. 519."

In *Sayers v. Wilmington & N. R. Co.*, 3 Pennewill 249, 49 A. 931 (Del.1901), the court said:

"We have said, in effect, that it would have been competent for the legislature at any time since the adoption of the present constitution to have re-enacted the act of 1887. And it seems to us quite obvious that, if the existing statute may be re-enacted without violating some prohibition of the constitution, either express

or implied, then there is no repugnancy between the act and the constitution; and, this being so, the act is not unconstitutional, and, not having been repealed, it continues in full force and operation."

The principle of law is sound and has application to the instant case.

Counsel for Agnew, in oral argument, stated that during the latter part of the 1977 North Dakota Legislative Assembly he recommended that the legislature suspend its rules and pass an act giving life to the various courts, county courts, etc., and in addition specifically include a validating Act which would validate court actions taken since the effective date of the new judicial Article. From this we infer that counsel sees no conflict between Chapters 27–07 and 27–08, NDCC, and the new judicial Article. Neither do we.

The following Colorado case is very similar to the case under consideration here, except that the superior court was created by legislation without a constitutional mandate such as we had in the old Article with reference to county courts.

In *People ex rel. Union Trust Co. v. Superior Court*, 488 P.2d 66 (Colo.1971), the plaintiffs brought a quo warranto action challenging the existence of the superior court in its appellate jurisdiction, arguing that a 1965 amendment to the Colorado Constitution had abolished the superior court. The district court dismissed the action, and the Colorado Supreme Court affirmed.

The superior court was originally established in 1954 by a legislative Act when the Constitution provided that the judicial power of the State shall be vested in the supreme court, district courts, county courts, and such other courts as may be provided by law. In 1962, a new Article VI was approved which repealed the former Article VI. The new constitutional Article (just as the old Article which was repealed) did not mention a superior court, but provided " . . . and such other courts . . ." as the legislative assembly may, from time to time establish. The plaintiffs argued that the new Article VI effected the repeal of the superior court statute, and that since such implied repeal the Legislature has not reestablished the superior court. The Colorado Supreme Court concluded that the statute establishing the superior court had never been repealed for two reasons: (1) that the Legislature had never expressly repealed the statute, and (2) that the legislative Act creating the superior court was not in conflict with any provisions of the Colorado Constitution.

The court stated that it is well established that its State Constitution is an instrument of limitation of authority and not an instrument which grants authority, as is the case with the United States Constitution. It stated that the statute establishing the superior court was enacted with the plenary power of the Legislature and would remain in effect until repealed by the Legislature or by the referendum power, or until there was a judicial declaration of unconstitutionality.

The court pointed out that the plaintiffs conceded that the Legislature could have re-established the superior court under the new Article, indicating that they were not arguing that the establishment Act was in conflict with either the former or the present Article VI.

The court concluded that there was no conflict and that the statute was still valid. The court referred to the general rule that unless an existing statute is inconsistent with an amendment to a State Constitution the statute continues in force subsequent to the adoption and effective date of the amendment, and it referred to 16 Am.Jur.2d *Constitutional Law* § 49.

In *McKenzie v. Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973), the Arkansas Supreme Court had before it the question whether a county circuit court had authority to permit a nonresident attorney not licensed to practice in Arkansas to participate in trial before it with an attorney who is a resident, licensed to practice, and regularly engaged in the practice of law in the State. The court held that the circuit court did not act in excess of its jurisdiction or proceed ille-

gally in granting permission. The defendants in a malpractice suit argued that the statute which apparently provided a penalty for unauthorized practice of law by a nonresident of the forum state was in conflict with the recently adopted Amendment 28 to the Arkansas Constitution, which dealt with the power of the courts to regulate the practice of law in the State. The court held that adoption of the amendment did not necessarily have the effect of invalidating every act of the general assembly bearing upon that subject, particularly those passed prior to the effective date of the amendment, if they are not in irreconcilable conflict with or repugnant to the amendment. The court held that an existing statute is superseded by a subsequent constitutional amendment only when there is an irreconcilable conflict or the statute is necessarily repugnant to the new constitutional provision; that repeal by implication is not looked upon with favor and is never allowed by the courts except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together. The court held that practice of law was a privilege° and not a natural right, the regulation of which is limited by the State Constitution. It found the pertinent sections of the statute not repugnant to Amendment 28 to the Constitution.

In *Kneip v. Herseth*, 214 N.W.2d 93 (S.D. 1974), the South Dakota Supreme Court said:

"Laws in force at the time of the adoption of the constitutional provision, and not inconsistent therewith, remain in force until changed by the Legislature. However, laws in conflict therewith are inoperative. *Mannie v. Hatfield,* 1908, 22 S.D. 475, 118 N.W. 817; *Synod of Dakota v. State,* 1891, 2 S.D. 366, 50 N.W. 632."

It appears the foregoing principle of law initially rested upon language similar to that found in Section 2 of the North Dakota Schedule of the Constitution as indicated by the citations, but has now come to rest on its own merits.

We have also examined cases that hold that the statute was superseded.

In *Galt v. Department of Labor and Industry,* 310 Mich. 66, 16 N.W.2d 869 (1944), the court held that a civil service constitutional amendment, which became effective in 1941, superseded and rendered ineffective a 1937 Act on civil service governing temporary and promotional appointments, without reciting any authority therefor except referring to the constitutional provision which provided that

"This commission shall supersede all existing state personnel agencies and succeed to their appropriations, records, supplies, equipment, and other property." [Quote found in *Reed v. Civil Service Commission,* 301 Mich. 137, 3 N.W.2d 41 (Mich.1942).]

It also provided that

"No person shall be appointed to or promoted in the state civil service who has not been certified as so qualified for such appointment or promotion by the commission."

The language of the constitutional amendment clearly provides that it is to supersede and take place over all previous Acts inconsistent therewith. However, in the instant case we do not have similar language nor do we have any language that implies such result.

In *The People v. Bradley,* 60 Ill. 390 (1871), the court had under consideration the validity of a writ of habeas corpus issued by the "Criminal Court of Cook County." The court's jurisdiction to issue such writ was challenged.

The court's jurisdiction initially rested upon statute 661, which in substance declared there should be established in the city of Chicago an inferior court of civil and criminal jurisdiction which should be a court of record by the name of the "recorder's court of the city of Chicago," and that it should have concurrent jurisdiction within said city with the circuit court in all criminal cases except treason and murder, and of civil cases where the amount in controversy does not exceed $100. This was amended subsequently by statute 671.

Later, Section 26 of the Article VI of the Illinois Constitution was adopted, which provided as follows:

"The recorder's court of the city of Chicago shall be continued, and shall be called the 'Criminal Court of Cook county.' It shall have the jurisdiction of a circuit court in all cases of criminal and *quasi* criminal nature arising in the county of Cook, or that may be brought before said county pursuant to law; and all recognizances and appeals taken in said county in criminal and *quasi* criminal cases shall be returnable and taken to said court. It shall have no jurisdiction in civil cases, except those on behalf of the people, and incident to such criminal and *quasi* criminal matters, and to dispose of unfinished business."

The Illinois court held that this provision clearly appears from its context to be self-executing and operated upon the court immediately upon the Constitution being adopted. It held that the court had the authority and jurisdiction to issue the writ.

In comparing the language involved in this case with the language in the case of *State v. Swan,* 1 N.D. 5, 44 N.W. 492 (1890), and the language we have under consideration in the present case, we note that the language of the new judicial Article does not contain similar self-executing provisions.

Counsel for Agnew referred to the case of *Commonwealth v. Hartranft,* 77 Pa. 154 (1874), in support of his contention, wherein the court had under consideration two constitutional provisions, one relating to the exercise of the power of mandamus, and the other pertaining to the abolition of certain courts. With reference to the courts, the new Constitution provided as follows:

"All courts of record and all existing courts, which are not specified in this Constitution, shall continue in existence until the first day of December in the year one thousand eight hundred and seventy-five, *without abridgement of their present jurisdiction, but no longer.*" [Emphasis added.]

The court held that the above language, "all courts of record" did not refer to the Pennsylvania Supreme Court, and because of the other provisions of the new Constitution original writs of mandamus to others than courts of inferior jurisdiction were not continued to December.

With reference to the original jurisdiction question, mandamus, the new Pennsylvania Constitution provided:

" . . . Supreme Court shall have original jurisdiction in cases of injunction where a corporation is a party defendant, of habeas corpus, of mandamus to courts of inferior jurisdiction, and of quo warranto as to all officers of the Commonwealth whose jurisdiction extends over the state, *but shall not exercise any other original jurisdiction.*" [Emphasis added.]

The court held that, because of the specific language in this constitutional provision, it did not have authority to issue a mandamus to a governor. It did say,

"This result is to be deplored, as depriving the people of one of the highest forms of remedy essential to the interests of a republic, and must drive every one to the seat of government, into a local court, to maintain the rights of the people against state officers, subject to all the delays which flow from the right of appeal. But it cannot be helped, so long as the restrictive provisions of the 3d section of the 5th article remain."

Significantly, the new judicial Article under consideration here does not contain any language approaching the language found in the Pennsylvania Constitution.

The language of the Pennsylvania constitutional provision is quite different from that of North Dakota's and as a consequence the Pennsylvania case cannot be used as any authority for the proposition contended by Agnew.

We are satisfied the rule of law now is that a statute which is valid when enacted is not automatically repealed by implication with the adoption of a non-self-executing constitution or constitutional amendment on the same subject unless the

statute is repugnant to, in conflict with, or inconsistent with the new constitution or constitutional amendment. However, if the new constitution or constitutional amendment is self-executing, an implied repeal may well result.

We also recognize and accept the rule of law that a statute on the books is not automatically repealed by implication upon the adoption of a new constitutional provision if the Legislature under the new constitutional provision could validly have enacted the same statute.

These concepts originally may have rested upon specific provisions of the Constitution usually found in the Schedule to prevent or avoid chaotic transition from Territory to State. But now they rest on their own merits as sound principles of law.

▆ Section 85 of the new judicial Article limits the legislature from vesting the judicial power in any body other than the supreme court and district courts, and such other courts as may be provided by law. It also "locks" the supreme and district courts into the constitution, and in this respect the legislature is limited.

But otherwise, Section 85 is not self-executing specifically because of the language, "and such other courts as may be provided by law."

▆ We conclude that the statutory provisions, Chapters 27–07 and 27–08, NDCC relating to county courts and county courts with increased jurisdiction are not repugnant to, in conflict with, or inconsistent with the new judicial Article and were not repealed, but remain in full force and effect until repealed or amended by appropriate legislative action.

The writ of prohibition is denied. The matter under consideration being of great public concern, no costs are assessed to either party.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.